# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*American Zurich Insurance Co. v. Wilcox & Christopoulos, L.L.C.*,

**2013 IL App (1st) 120402**

---

Appellate Court
Caption

AMERICAN ZURICH INSURANCE COMPANY, Plaintiff-Appellant,
v. WILCOX AND CHRISTOPOULOS, L.L.C., n/k/a The Christopoulos
Law Firm, Defendant-Appellee (Mark Wilcox and Michael Demnicki,
Defendants).

District & No.

First District, Fourth Division
Docket No. 1-12-0402

Rule 23 Order filed      October 25, 2012
Rule 23 Order
withdrawn               January 10, 2013
Opinion filed           January 17, 2013

Held
(*Note: This syllabus
constitutes no part of
the opinion of the court
but has been prepared
by the Reporter of
Decisions for the
convenience of the
reader.*)

The provision of the legal malpractice policy plaintiff issued to defendant
and defendant's law firm excluding coverage for alleged acts or
omissions by any insured for any business in which any insured has a
controlling interest excluded coverage for both defendant and his firm in
an underlying suit alleging that defendant and his firm engaged in a
conspiracy to operate a lounge illegally, since defendant acted on behalf
of a company he owned that was engaged in obtaining liquor licenses and
the exclusion applied to all insureds based on the conduct or interest of
any one insured.

Decision Under
Review

Appeal from the Circuit Court of Cook County, No. 10-CH-10169; the
Hon. Sophia H. Hall, Judge, presiding.

Judgment

Reversed.

Counsel on Appeal    Jeffrey A. Goldwater, Michelle M. Bracke, and Kelly M. Ognibene, all of Lewis Brisbois Bisgaard & Smith LLP, of Chicago, for appellant.

Larry S. Kowalczyk and Michele T. Oshman, both Querry & Harrow, Ltd., of Chicago, for appellee.

Panel    JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Presiding Justice Lavin and Justice Epstein concurred in the judgment and opinion.

## OPINION

¶ 1    This cause arises out of a declaratory judgment action (735 ILCS 5/2-701 (West 2002)) filed by the plaintiff-appellant, American Zurich Insurance Co. (American Zurich), against the defendant-appellee, the law firm of Wilcox & Christopoulos, L.L.C., (the Wilcox law firm) and the defendant, Mark Wilcox (Wilcox), wherein American Zurich sought a declaration that it was not obligated to defend Wilcox or the Wilcox law firm in an underlying claim for civil conspiracy brought by Michael Demnicki (Demnicki) against, *inter alia*, Wilcox and the firm. The underlying claim alleges *inter alia*, that Wilcox and the Wilcox law firm were involved in a civil conspiracy to open and operate a restaurant/lounge by illegal means. Because at all relevant times the Wilcox law firm had a lawyers professional liability insurance policy with American Zurich, it tendered the defense of the underlying claim to American Zurich. However, American Zurich denied coverage and refused to defend or indemnify either Wilcox or the law firm against any action by Demnicki.

¶ 2    After discovery, the parties filed cross-motions for summary judgment seeking a declaration regarding American Zurich's duty to defend Wilcox and the firm. The circuit court held that American Zurich had a duty to defend the Wilcox law firm but no duty to defend Wilcox individually. The court therefore granted American Zurich's motion for summary judgement as to Wilcox but denied the motion as to the Wilcox firm.

¶ 3    American Zurich now appeals that portion of the circuit court's order denying the motion for summary judgement as to the Wilcox law firm. American Zurich contends that the circuit court erred when it found that exclusion E of American Zurich's policy to the Wilcox law firm, precluding coverage for any claim arising out of "the alleged acts or omissions of any insured *** for a business enterprise *** in which any insured has a controlling interest," did not apply to the law firm, so as to oblige American Zurich to defend the firm against the Demnicki suit. For the reasons that follow, we reverse.

¶ 4                                    I. BACKGROUND

¶ 5      Since the record before us is voluminous, we set forth only the relevant and undisputed facts.


¶ 6                            A. The Underlying Complaint

¶ 7      On November 16, 2009[1], Demnicki filed an action for civil conspiracy in the circuit court against numerous parties, including, relevant for this appeal, Wilcox and the Wilcox law firm. The other parties named as defendants in the complaint include: (1) Jason Hyatt and (2) Matt Stoen, owners of the now-defunct Panacea Partners, LLC (Panacea Partners), which hoped to open and operate a restaurant/lounge (De La Costa) in Chicago; (3) Anthony Frink and Mark Nora, attorneys at Holland & Knight, LLP (Holland & Knight), who, at all relevant times, served as counsel for Panacea Partners; (4) the firm of Holland & Knight, which performed legal services for Panacea Partners, including drafting agreements and documents related to the ownership of Panacea Partners; (5) Liquor License Solutions, LLC (Liquor License Solutions), an Illinois limited liability company that is owned and controlled by Wilcox and Jennifer Walsh, and which was hired by Panacea Partners to obtain a liquor license for the De La Costa restaurant/lounge from the City of Chicago and the State of Illinois; and (6) Jennifer Walsh, a member and manager of Liquor License Solutions.

¶ 8      In his complaint, Demnicki alleged that all of the defendants, including Wilcox and the Wilcox law firm were involved in a civil conspiracy to open and operate the De La Costa restaurant/lounge by illegal means, *i.e.*, by committing perjury, making fraudulent misrepresentations, breaching their fiduciary duties, and violating the Illinois Limited Liability Company Act (805 ILCS 180/1-1 *et seq.* (West 2008)), the Illinois Liquor Control Act of 1934 (235 ILCS 5/1-1 *et seq.* (West 2002)), and the City of Chicago Liquor License Ordinance (Chicago Municipal Code § 4-60 (2012)), by misrepresenting and concealing the ownership and management of Panacea Partners from the City of Chicago Liquor License Commission, the State of Illinois Liquor Control Commission and prospective investors (including Demnicki) so as to enable the restaurant/lounge to obtain a liquor license and open for business.

¶ 9      The complaint alleges that in January 2005, Holland & Knight was first hired by Panacea Partners to provide consulting services on the proposed De La Costa restaurant/lounge. In addition, in early 2006, Wilcox and Liquor License Solutions[2] were retained by Panacea Partners to obtain a liquor license for the De La Costa restaurant/lounge, and Stoen directed Wilcox to work together with Holland & Knight on this project. In turn, according to the complaint, Wilcox utilized Liquor License Solutions and Walsh to help him draft liquor

---

[1]That complaint was amended twice, with the second and final amended complaint filed on September 1, 2010.

[2]According to the complaint, at all relevant times, Wilcox represented himself, his law firm and his company Liquor License Solutions as being experts in obtaining liquor licenses from the State of Illinois and the City of Chicago, to his clients and customers.

license applications for Panacea Partners from the City of Chicago and the State of Illinois. The complaint alleges that at all relevant times Wilcox acted both individually and in the scope of his employment in the Wilcox law firm and in the scope of his employment with Liquor License Solutions.

¶ 10    According to the underlying complaint, Wilcox and Walsh advised Stoen that he would have to undergo the City of Chicago's background check as part of the liquor license application process and that if he did not pass the requirements, Panacea Partners' liquor license application, which was essential to their business plan and the viability of the De La Costa restaurant, would be denied. The complaint further alleges that Wilcox and Walsh determined that Panacea Partners would not be able to obtain a liquor license if Stoen's ownership in the restaurant/lounge was disclosed to the authorities. They therefore decided to take Stoen's name off all relevant documents, for the purpose of obtaining a liquor license.

¶ 11    The complaint alleges that in this vein all of the defendants agreed together to prepare various fraudulent corporate documents relating to Panacea Partners and its financing. Specifically, the complaint alleges that the defendants agreed: (1) to create false articles of amendment for Panacea Partners, changing Panacea Partners from a manager-managed limited liability company to a member-managed limited liability company, without member approval, naming Hyatt as its sole member; (2) to create a false operating agreement for Panacea Partners, without member approval, to conceal Stoen and the other investor/members' membership and management of Panacea Partners from the licensing authorities and any new investors; (3) to use these false documents, together with a false financial disclosure form depicting that all of Panacea Partners' financing came from Hyatt, as part of Panacea Partners' liquor license applications to the City of Chicago and the Illinois Liquor Control Commission; (4) to use the false articles of amendment and the false operating agreement to solicit more investors; and (5) to conceal all of this illegal conduct from other investors/members and any new investors in Panacea Partners.

¶ 12    With respect to Wilcox and the Wilcox law firm, the complaint specifically alleges that on April 6, 2006, Walsh of Liquor License Solutions sent an email to Nora of Holland & Knight, stating that the operating agreement of Panacea Partners needed to be amended to reflect a change in members, thereby concealing Stoen's involvement. It is further alleged that an employee of Liquor License Solutions, Barbara Mateblweski, emailed Nora to provide him with an outline of the steps needed to conceal Stoen's involvement in Panacea Partners. Wilcox was copied on that email and followed up with Nora the next day to confirm Nora's receipt and understanding of the email. A series of emails between Walsh, Mateblweski, Stoen and Nora followed throughout April, all discussing the steps that needed to be taken to remove Stoen from the operating agreement and reminding of the impending May 9 and 14 deadlines for submitting the application for a liquor license. According to the complaint, at all times, Wilcox had access to and reviewed these Liquor License Solutions emails. The complaint further alleges that on May 10, 2006, Wilcox prepared an amended operating agreement for Panacea Partners that was backdated to April 2, 2006, and removed Stoen. Wilcox, Walsh, Liquor License Solutions and Mateblweski then provided this false document to, *inter alia*, the City of Chicago, the Illinois Liquor Control Commission and Demnicki.

¶ 13     In addition to the civil conspiracy claim, the complaint also alleges that Wilcox and the Wilcox law firm committed the tort of fraudulent misrepresentation by concealing the aforementioned information from Demnicki and thereby inducing him to invest additional funds into Panacea Partners, which he would not have done had he known of their misrepresentations. Accordingly, the complaint requests judgment in Demnicki's favor and against Wilcox and the Wilcox law firm, in the amount of $1 million, in addition to $3.5 million in punitive damages.

¶ 14                         B. The Declaratory Judgment Action

¶ 15     At the time of the alleged civil conspiracy, the Wilcox law firm was covered by a lawyers professional liability insurance policy with American Zurich. That policy was issued by American Zurich to the Wilcox law firm for the period of February 26, 2009, to February 26, 2010. The policy contained general professional liability coverage with liability limits of $2 million per each claim and $2 million in the aggregate, in excess of a $5,000 deductible. The policy lists the Wilcox law firm as the "named insured." The application for the policy, however, includes a list of attorneys working for the firm, including, *inter alia*, Wilcox and Dimitrios Christopoulos.

¶ 16     After Demnicki filed his claim against Wilcox and the Wilcox law firm, the law firm attempted to tender the defense of the case to its insurer, American Zurich. However, American Zurich refused, and instead on March 11, 2010,[3] filed a declaratory judgment action in the circuit court, seeking that the court declare that it owed no duty to defend either Wilcox or the Wilcox law firm in the Demnicki claim.

¶ 17     In the complaint for declaratory judgment, American Zurich alleged that: (1) the claim did not come within American Zurich policy's insuring agreement; (2) that Wilcox was not an insured and that (3) several exclusions in the policy (including, *inter alia*, exclusions D and E) precluded coverage. In support of its contentions, American Zurich attached a copy of the insurance policy issued to the Wilcox law firm. That policy provides the following relevant coverage grant:

"**I. INSURING AGREEMENT**

A. COVERAGE

The **Company** will pay on behalf of an **Insured**, subject to the limit of liability, all amounts in excess of the deductible shown in the Declarations that an **Insured** becomes legally obligated to pay as **Damages** and **Claim Expenses** because of a **Claim** that is both made and reported to the **Company** during the **Policy Period** or any extended to reporting period based on an act or omission in the **Insured's** rendering or failing to render **Legal Services** for others."

¶ 18     In addition, section III of the policy provides an exhaustive list of exclusions, several of which, relevant to this appeal, preclude coverage for the conduct of the insured relative to

---

[3]That declaratory judgment complaint was amended twice, first on April 29, 2010, and then on September 29, 2010.

outside business enterprises other than the insured law firm. Section III provides in pertinent part:

"This policy shall not apply to any **Claim** based upon or arising out of, in whole or in part:

\* \* \*

D. the **Insured's** capacity or status as:

1. an officer, director, partner, trustee, shareholder, manager or employee of a business enterprise, charitable organization or pension, welfare profit sharing, mutual or investment fund or trust;

\* \* \*

E. The alleged acts or omissions by any **Insured**, with or without compensation, for any business enterprise, whether for profit or not-for-profit, in which any **Insured** has a **Controlling Interest**."

¶ 19    Furthermore, section VI of the policy provides definitions for several relevant terms. First, the policy defines an "Insured" as:

"1. [the] **Named Insured**, which is the entity shown in Item 2 of the Declarations;

2. any lawyer or professional corporation listed in the application on the day the **Policy Period** incepts until such time as the lawyer or professional corporation ceases to be a member of the **Named Insured** subject to section 4 below.

\* \* \*

3. any lawyer or professional corporation who is a former partner, officer, director, stockholder or shareholder or employee of the **Named Insured** or **Predecessor Firm**, but only in rendering or failing to render **Legal Services** on behalf of the **Named Insured** or **Predecessor Firm**;"

The policy also defines "Legal Services" as:

"services performed by an **Insured** as a licensed lawyer in good standing, arbitrator, mediator, title agent, notary public, administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity but only where the act or omission was in the rendition of services ordinarily performed as a lawyer. **Legal Services** shall not be extended to include services of a real estate agent or broker or as an insurance agent or broker."

Finally, the policy defines "Controlling Interest" as:

"the right of an **Insured** or a member of an **Insured's Immediate Family**, directly or indirectly, to:

1. own 10% or more of an interest in an entity; or

2. vote 10% or more of the issued and outstanding voting stock in an incorporated entity; or

3. elect 10% or more of the directors of an incorporated entity; or

4. receive 10% or more of the profits of an unincorporated entity; or

5. act as general partner of a limited liability partnership, managing general partner of a general partnership, or comparable position in any other business enterprise."

¶ 20    Following protracted discovery, on June 21, 2011, Wilcox and the Wilcox law firm moved for judgment on the pleadings. On July 15, 2011, American Zurich filed its response and a cross-motion for summary judgment asserting that the Demnicki claim was not covered under the American Zurich policy. On September 23, 2011, the circuit court granted Wilcox's and the law firm's motion for judgment on the pleadings, solely with respect to the scope of coverage. In doing so, the circuit court found that the allegations in the Demnicki claim came within the insuring agreement of the American Zurich policy, *i.e.*, that the allegations in that underlying complaint involved business activities performed by the law firm, which required specialized knowledge and skill and fell squarely within the coverage of the legal malpractice policy that the law firm had purchased from American Zurich.[4] The circuit court further instructed American Zurich to file a second motion for summary judgment solely as to the American Zurich policy exclusions.

¶ 21    On October 13, 2011, American Zurich filed a motion for summary judgment asserting that it was not required to defend Wilcox or the Wilcox law firm under exclusions D and E of the American Zurich policy. With respect to exclusion D, American Zurich contended that the Demnicki claim was based upon and arose out of the insured's capacity or status as an officer, director, partner shareholder and/or manager of a business enterprise, other than the Wilcox law firm, namely, Liquor License Solutions, in which Wilcox had a one-third equity interest, so as to exempt the Demnicki claim from coverage under the policy. With respect to exclusion E, American Zurich argued that the Demnicki claim was not covered under the policy because it was based upon and/or arose out of the alleged conduct of Wilcox and the Wilcox law firm for a business enterprise in which they had a controlling interest. Accordingly, American Zurich sought a declaration that under the plain language of the policy it was not required to defend either Wilcox or the law firm.

¶ 22    Wilcox and the Wilcox law firm filed separate responses to American Zurich's motion for summary judgement. In his response, Wilcox argued that exclusions E and D did not apply to him so as to preclude coverage because the underlying law suit was based upon alleged acts he had committed *for* Panacea Partners and not, as argued by American Zurich, *for* Liquor License Solutions, the company he admitted he managed and in which he had a controlling interest. The Wilcox law firm adopted Wilcox's argument with respect to exclusion E, contending that since Wilcox acted solely *for* Panacea Partners, exclusion E did not apply to the law firm as well.[5] In addition, the law firm contended that exclusion D did not apply to preclude coverage of the law firm because the law firm was not an officer,

_____

[4]American Zurich does not appeal this ruling.

[5]In the alternative, the Wilcox law firm argued that if the court were to find that Wilcox acted *for* Liquor License Solutions and not Panacea Partners, it should find that the term "for" used in exclusion E ("the alleged acts or omissions by any Insured *** *for* any business enterprise" (emphasis added)) is at best ambiguous so as to require construction against American Zurich as the drafter of the policy.

director, partner, trustee, shareholder, manager or employee of Liquor License Solutions, the company.

¶ 23    On January 13, 2011, the circuit court issued a decision and order granting American Zurich's motion for summary judgment as to Wilcox but denying it as to the Wilcox law firm. In doing so, the circuit court found that exclusions D and E both applied to Wilcox because the allegations in the underlying complaint established that Demnicki's claim arose, at least in part, from Wilcox's acts "for" Liquor License Solutions, in which Wilcox had a "controlling interest," and because Wilcox's actions arose from his capacity as a principal in that company. In that respect, the court noted, among other things, that the underlying complaint specifically alleged that Wilcox acted on behalf of Liquor License Solutions in performing the tasks to obtain a liquor licence for Panacea Partners. In particular, the court found that Wilcox regularly reviewed emails sent by Liquor License Solution employees and was specifically copied on an email sent by employee Mateblweski to Nora of Holland & Knight regarding steps that needed to be taken to remove Stoen from the relevant corporate documents so as to obtain a liquor license for Panacea Partners. In addition, the court noted that "Wilcox amended the operating agreement for Panacea Partners as a last-minute task that needed to be completed in order to submit the liquor license application, which was being handled by Liquor License Solutions, by the official deadline."

¶ 24    With respect to the Wilcox law firm, however, the court found that neither exclusion applied because American Zurich failed to "identify any facts alleged in the underlying complaint" that would bring the law firm within those exclusions. According to the circuit court, there were no allegations that the law firm itself had a "controlling interest" in Liquor License Solutions or that it acted in any capacity for that company.

¶ 25    Accordingly, the circuit court concluded that while American Zurich had no duty to defend Wilcox, it was obligated to defend the Wilcox law firm against the Demnicki law suit. American Zurich now appeals, solely challenging the circuit court's decision as to the applicability of exclusion E to the Wilcox law firm.

¶ 26                                    II. ANALYSIS

¶ 27    We initially begin by setting forth the appropriate standard of review. It is well established that "[t]he construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court and appropriate subjects for disposition by summary judgment." *Konami (America), Inc. v. Hartford Insurance Co. of Illinois*, 326 Ill. App. 3d 874, 877 (2002). Summary judgment, however, is a drastic measure of disposing litigation and should be granted only when the movant's right to judgment is clear and free from doubt. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2004); see also *Fidelity National Title Insurance Co. of New York v. Westhaven Properties Partnership*, 386 Ill. App. 3d 201, 212 (2007) (citing *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004)); see also *Virginia*

*Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). Where cross-motions for summary judgment are filed in an insurance coverage case, the parties acknowledge that no material questions of fact exist and only the issue of law regarding the construction of an insurance policy is present. *American Family Mutual Insurance Co. v. Fisher Development, Inc.*, 391 Ill. App. 3d 521, 525 (2009) (citing *Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 363 Ill. App. 3d 335, 338-39 (2005)). We review the circuit court's decision to grant or deny such a motion *de novo*. *Virginia Surety Co.*, 224 Ill. 2d at 556.

¶ 28     It is well settled that in order to determine whether an insurer has a duty to defend an action against the insured, a reviewing court must compare the allegations of the underlying complaint to the relevant portions of the insurance policy. *Outboard Marine Corp.*, 154 Ill. 2d at 108; see also *Dixon Distributing Co. v. Hanover Insurance Co.*, 161 Ill. 2d 433, 438 (1994); *Viking Construction Management, Inc. v. Liberty Mutual Insurance Co.*, 358 Ill. App. 3d 34, 41 (2005) ("The duty of an insurer to defend an insured is determined by the allegations of the underlying complaint." (citing *Lyons v. State Farm Fire & Casualty Co.*, 349 Ill. App. 3d 404, 406 (2004))). If the underlying complaint alleges facts that fall "within or *potentially* within" the coverage of the policy, the insurer is obligated to defend its insured even if the allegations are "groundless, false, or fraudulent." (Emphasis in original.) *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991); see also *Lyons*, 349 Ill. App. 3d at 406 ("A duty to defend arises if the complaint's allegations fall within or potentially within the coverage provisions of the policy."). In other words, an insurer may not justifiably refuse to defend an action against the insured "unless it is *clear* from the face of the underlying complaint[ ] that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." (Emphasis in original.) *Wilkin Insulation Co.*, 144 Ill. 2d at 73; see also *Aetna Casualty & Surety Co. v. Prestige Casualty Co.*, 195 Ill. App. 3d 660, 664 (1990) ("Unless the complaint, on its face, clearly alleges facts which, if true, would exclude coverage, the potentiality of coverage is present and the insurer has a duty to defend."). Moreover, if the underlying complaint alleges several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy. *Wilkin Insulation Co.*, 144 Ill. 2d at 73; see also *American Country Insurance Co. v. James McHugh Construction Co.*, 344 Ill. App. 3d 960, 975 (2003) (" 'the insurer has the duty to defend unless the allegations of the underlying complaint demonstrate that the plaintiff in the underlying suit will not be able to prove the insured liable, under any theory supported by the complaint, without also proving facts that show the loss falls outside the coverage of the insurance policy. [Citations.] The insurer may simply refuse to defend only if the allegations of the underlying complaint preclude any possibility of coverage.' [Citation.]"). Accordingly, the threshold that an underlying complaint must satisfy to present a claim of potential coverage is low, and for coverage to exist, the complaint need only present a possibility of recovery, not a probability of one. See *Bituminous Casualty Corp. v. Gust K. Newberg Construction Co.*, 218 Ill. App. 3d 956, 960 (1991); see also *Lyons*, 349 Ill. App. 3d at 407.

¶ 29     In determining whether the allegations in the underlying complaint meet that threshold requirement, both the underlying complaint and the insurance policy must be liberally

construed in favor of the insured. *Wilkin Insulation Co.*, 144 Ill. 2d at 73; see also *Lyons*, 349 Ill. App. 3d at 407. Where the words in the policy are clear and unambiguous, "a court must afford them their *plain, ordinary, and popular meaning*." (Emphasis in original.) *Outboard Marine Corp.*, 154 Ill. 2d at 108; see also *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292-93 (2001). However, if the words in the policy are susceptible to more than one reasonable interpretation, they will be considered ambiguous and will be strictly construed in favor of the insured and against the insurer who drafted the policy. *Outboard Marine Corp.*, 154 Ill. 2d at 108; see also *Travelers Insurance Co.*, 197 Ill. 2d at 293; see also *Wilkin Insulation Co.*, 144 Ill. 2d at 74 ("All doubts and ambiguities must be resolved in favor of the insured.").

¶ 30    On appeal, America Zurich contends that it has no duty to defend the Wilcox law firm against Demnicki's complaint because exclusion E applies to acts or omissions of *"any* insured" "for any business entity" in which "*any* insured" has a "controlling interest." (Emphasis added.) American Zurich asserts that Wilcox is an insured attorney under the American Zurich policy, and therefore any acts by him for a business in which he had a controlling interest are excluded from coverage. American Zurich contends that since the circuit court already found that Wilcox had a controlling interest in Liquor License Solutions, so as to trigger the application of exclusion E, it necessarily follows from the plain language of that exclusion that the exclusion also applies to the Wilcox law firm.

¶ 31    The Wilcox law firm responds, as it did before the circuit court, that exclusion E applies only when an insured attorney does work *for* an entity in which any insured has a controlling interest, whereas the underlying complaint alleged that Wilcox's work was done *for* Panacea Partners and not *for* Liquor License Solutions. The Wilcox law firm therefore argues that contrary to the circuit court's ruling, exclusion E does not apply to either Wilcox or the Wilcox law firm. In the alternative, the Wilcox law firm argues, again, as it did before the circuit court, that the word "for" used in exclusion E ("the alleged acts or omissions by any Insured *** *for* any business enterprise" (emphasis added)) is at best ambiguous and should be construed against American Zurich as the drafter of the policy.

¶ 32    American Zurich replies that the Wilcox law firm should be barred from raising these arguments on appeal because they were previously litigated by the circuit court and decided against the Wilcox law firm, and because the firm did not file a cross-appeal as to these issues so as to permit their review. According to American Zurich, the issues before this court are limited to those raised by American Zurich. For the reasons that follow, we disagree.

¶ 33    Our courts have repeatedly held that "[f]indings of the trial court adverse to the appellee do not require the appellee's cross-appeal if the judgment of the trial court was not at least in part against the appellee." *Mortgage Electronic Registration Systems, Inc. v. Thompson*, 368 Ill. App. 3d 1035, 1040 (2006) (citing *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 387 (1983)); see also *General Auto Service Station v. Maniatis*, 328 Ill. App. 3d 537, 544-45 (2002) (noting that findings adverse to the appellee require a cross-appeal only if the judgment was in part against the appellee); see also *People v. Hamm*, 149 Ill. 2d 201, 215 (1992) ("While defendants did not file a cross-appeal to raise these issues, they need not, and cannot, as specific findings of the trial court adverse to an appellee do not

-10-

require a cross-appeal as long as the judgment was entirely in favor of the appellee."); see also *People v. Bradford*, 372 Ill. 63 (1939). In the present case, the judgment of the circuit court was entirely in favor of the Wilcox law firm, as it received all that it asked for, namely, a declaration that American Zurich was required to defend it in the underlying Demnicki claim. The fact that in doing so the court also ruled against Wilcox and found that American Zurich owed no duty to defend him is inconsequential since Wilcox is not an appellee in the instant matter. Moreover, an appellee may argue any matter to sustain a judgment as long as it is supported by the record. *Hamm*, 149 Ill. 2d at 215 (citing *Estate of Johnson v. Condell Memorial Hospital*, 119 Ill. 2d 496, 502 (1988)). Here, the Wilcox law firm's argument is based upon the language of the exclusion policy and the underlying complaint, both of which are contained in the record below. Accordingly, we address the merits of the appeal.

¶ 34     In Illinois, it is the insurer's burden to affirmatively demonstrate the applicability of an exclusion. *Insurance Corp. of Hanover v. Shelborne Associates*, 389 Ill. App. 3d 795, 799 (2009); see also *Pekin Insurance Co. v. Miller*, 367 Ill. App. 3d 263, 267 (2006). "Exclusion provisions that limit or exclude coverage must be construed liberally in favor of the insured and against the insurer." *Pekin*, 367 Ill. App. 3d at 267. In construing an insurance policy, the primary function of the court is to "ascertain and enforce the intentions of the parties as expressed in the agreement." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). "To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391. Where the insurer relies on a provision that it contends excludes coverage to reject a tender of defense, we review the applicability of the provision to ensure it is " 'clear and free from doubt' that the policy's exclusion prevents coverage." *Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 560 (2000) (quoting *Bituminous Casualty Corp. v. Fulkerson*, 212 Ill. App. 3d 556, 564 (1991)).

¶ 35     In the present case, there is no dispute that American Zurich does not have an obligation to defend Wilcox under exclusion D of the insurance policy. The sole question that is before us is whether American Zurich has a duty to defendant the Wilcox law firm under exclusion E. In order to answer that question, however, we must first determine whether it has a duty to defend Wilcox under exclusion E.

¶ 36     Exclusion E explicitly states that the policy "shall not apply to any Claim based upon or arising out of, in whole or in part" "[t]he alleged acts or omissions by *any Insured* *** for any business enterprise *** in which *any Insured* has a Controlling Interest." (Emphases added.) The policy defines an "insured," *inter alia*, as: "[the] Named Insured" and "any lawyer or professional corporation listed in the application on the day the Policy Period incepts." Since Wilcox was listed as a lawyer in the application for the policy on the day the policy was incepted, there can be no doubt that he is an insured under the policy.

¶ 37     The next question we must answer is whether within the meaning of exclusion E, Wilcox, as an insured, was acting "for" a company in which he had a controlling interest. If Wilcox was acting for Panacea Partners, in which he had no controlling interest, then the

exclusion does not apply and American Zurich has a duty to defend him. If, however, Wilcox was acting for Liquor License Solutions, a company he admits he managed and in which he had a controlling interest, then exclusion E applies and American Zurich is not obligated to defend him in the underlying Demnicki law suit. Hence, the real dispute before us is the interpretation of the term "for" in exclusion E and whether that term is sufficiently ambiguous so as to require us to construe it against American Zurich as the drafter of the insurance policy. *Outboard Marine Corp.*, 154 Ill. 2d at 108-09 ("if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous [citation] and will be construed in favor of the insured and against the insurer who drafted the policy"); see also *Travelers Insurance Co.*, 197 Ill. 2d at 293; see also *Wilkin Insulation Co.*, 144 Ill. 2d at 74 ("All doubts and ambiguities must be resolved in favor of the insured.").

¶ 38 The terms of an insurance policy "should not be read in isolation" (*Brown v. Delfre*, 2012 IL App (2d) 111086, ¶ 20), but must be considered in context (*Outboard Marine Corp.*, 154 Ill. 2d at 108). See also *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011) (an insurance policy, like any other contract "must be construed as a whole, viewing each provision in light of the other provisions. [Citation.] The parties' intent is not determined by viewing a clause or provision in isolation, or in looking at detached portions of the contract."); see also *Hot Light Brands, L.L.C. v. Harris Realty, Inc.*, 392 Ill. App. 3d 493, 499 (2009). Furthermore, if the terms are clear and unambiguous, they must be given their plain, ordinary, and popularly understood meaning. *Thompson*, 241 Ill. 2d at 441. A term is not ambiguous "merely because the parties disagree on its meaning"; rather, "[a]mbiguity exists where language is obscure in meaning through indefiniteness of expression." *Hot Light Brands*, 392 Ill. App. 3d at 500; see also *Gassner v. Raynor Manufacturing Co.*, 409 Ill. App. 3d 995, 1008 (2011) (an ambiguity will be found only "where there is doubt as to the true sense or meaning of the words themselves or an indefiniteness in the words' expression").

¶ 39 We must therefore consider the term "for" in context of the entirety of exclusion E, *i.e.*, in the context of the entire clause "for any business enterprise *** in which any Insured has a Controlling Interest."

¶ 40 The parties naturally disagree as to this point, with the Wilcox law firm arguing that Wilcox acted for Panacea Partners and American Zurich contending that he acted for Liquor License Solutions. With their arguments, however, the parties implicitly acknowledge that the term "for" in exclusion E essentially means for the "benefit of," disagreeing only as to whose benefit Wilcox's actions were aimed at. This implicit acknowledgment is supported by the American Heritage Dictionary's definition of the term "for" as: (1) "used to indicate the recipient or beneficiary of an action"; or (2) "on behalf of"; or (3) "in favor of," all of which essentially mean "for the benefit of." American Heritage Dictionary 685 (5th ed. 2011). Accordingly, in this context, we fail to see two reasonable interpretations of the term "for." All three of these definitions essentially define "for" as "for the benefit of" and we therefore find the term unambiguous.

¶ 41 Moreover, the fact that Wilcox may have been acting for the benefit of two companies, Liquor License Solutions and Panacea Partners, does not make the term "for" ambiguous. Even if Wilcox was acting for the benefit of both, there can be no doubt, nor does the Wilcox law firm attempt to deny, that Wilcox was also acting for the benefit of his company, Liquor

-12-

License Solutions. Nothing in the underlying complaint suggests that Wilcox agreed to altruistically engage Liquor License Solutions to help Panacea Partners or that he did so for the detriment, rather than the benefit of his company. The allegations of the underlying complaint allege that Wilcox advertised himself and Liquor License Solutions as experts in obtaining liquor licenses in Chicago and Illinois. The complaint further alleges that Panacea Partners paid Liquor License Solutions for its services in obtaining a liquor license for the De La Costa restaurant/lounge, and that numerous Liquor License Solutions employees worked on obtaining that license. Accordingly, there can be no doubt that Wilcox acted for the benefit of Liquor License Solutions, so as to trigger exclusion E of the American Zurich policy. American Zurich therefore has no obligation to defend Wilcox under that provision.

¶ 42    Given this conclusion, we must next address whether American Zurich must defend the Wilcox law firm pursuant to exclusion E. That exclusion is applicable to all insureds under the policy based upon the conduct or interest of any one insured. The language of exclusion E explicitly precludes coverage of "alleged acts or omissions by *any* Insured *** for any business enterprise *** in which *any* Insured has a Controlling Interest." (Emphases added.) As already discussed above, there can be no doubt that Wilcox is an insured under the policy, since he was listed as a lawyer in the application for the policy on the day the policy was incepted. Accordingly, since, as an insured, Wilcox acted for the benefit of Liquor License Solutions, in which he has a controlling interest, exclusion E also applies to the entire law firm. Therefore, pursuant to exclusion E, American Zurich need not defend the Wilcox law firm.

¶ 43                              III. CONCLUSION

¶ 44    For all of the aforementioned reasons, we reverse the judgment of the circuit court.

¶ 45    Reversed.