# Illinois Official Reports

## Appellate Court

*Illinois State Bar Ass'n Mutual Insurance Co. v. Leighton Legal Group, LLC*,
2018 IL App (4th) 170548

| | |
|---|---|
| Appellate Court Caption | ILLINOIS STATE BAR ASSOCIATION MUTUAL INSURANCE COMPANY, Plaintiff-Appellant, v. LEIGHTON LEGAL GROUP, LLC, an Illinois Limited Liability Company; G. TIMOTHY LEIGHTON; CAROL M. McCLURE; and CYNTHIA S. McCLURE, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-17-0548 |
| Filed | May 22, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 16-MR-843; the Hon. Brian T. Otwell, Judge, presiding. |
| Judgment | Reversed; judgment entered for ISBA. |
| Counsel on Appeal | Pretzel & Stouffer, Chtrd., of Chicago (Robert Marc Chemers, Peter G. Syregelas, and Philip G. Brandt, of counsel), for appellant.<br><br>Amelia S. Buragas, of Kelly Law Offices, P.C., of Bloomington, for appellees Leighton Legal Group, LLC, and G. Timothy Leighton.<br><br>Russell L. Reed, of Hinshaw & Culbertson, LLP, of Springfield, for other appellees. |

Panel                     JUSTICE STEIGMANN delivered the judgment of the court, with opinion.

Justices Holder White and DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1     In August 2016, plaintiffs, Carol M. McClure and Cynthia S. McClure, filed a complaint against G. Timothy Leighton and the Leighton Legal Group, LLC (collectively, the insured); Daniel Sanchuk; DPS Consulting, LLC; and other nominal defendants in the Superior Court for the District of Columbia. The insured was an attorney and cotrustee for a trust of which plaintiffs were the remainder beneficiaries.

¶ 2     The complaint (1) sought a declaratory judgment as to the ownership of the trust property, (2) sought restoration of trust property, (3) sought a constructive trust, (4) requested termination of the trust, (5) alleged self-dealing by the insured, (6) alleged breach of good faith and fair dealing, (7) alleged breach of trust for failure to administer the trust, (8) requested the removal of the trustees, and (9) sought the appointment of a special fiduciary to perform an accounting of trust property. Throughout the complaint, plaintiffs alleged willful conduct by the insured.

¶ 3     In September 2016, the Illinois State Bar Association Mutual Insurance Company (hereinafter, ISBA) filed a complaint for declaratory judgment, contending it had no duty to defend the insured against the aforementioned complaint. ISBA asserted that the insured's actions constituted intentional conduct and was excluded from coverage.

¶ 4     In March 2017, the insured filed a motion for a judgment on the pleadings, arguing that the underlying complaint's allegations fall within, or potentially within, the policy's coverage. In May 2017, ISBA filed a motion for judgment on the pleadings, asserting again it did not owe a duty to defend the insured because his actions as alleged in the underlying complaint were intentional. In June 2017, the trial court concluded that ISBA had a duty to defend under the terms of the policy.

¶ 5     ISBA appeals, arguing that the trial court erred by granting judgment in favor of the insured because "the underlying [c]omplaint clearly alleged intentional conduct which is expressly excluded from coverage under the ISBA Mutual policy." We conclude that the insured's conduct, as alleged in the underlying complaint, is excluded from coverage.

¶ 6                                I. BACKGROUND
¶ 7                           A. The Underlying Complaint
¶ 8                            1. *The Joseph McClure Trust*
¶ 9     In August 2016, plaintiffs filed the underlying complaint against the insured in the Superior Court for the District of Columbia. The underlying complaint stated that nearly 40 years earlier, Joseph McClure and James Lundberg formed a variety of business entities to co-own real property and conduct business. The complaint noted that Joseph and James acquired valuable real estate within the District of Columbia. In 1992, James died. On July 7, 1995, Joseph executed his last will and testament. On July 11, 1995, Joseph died.

¶ 10    Joseph's will directed that after satisfying specific bequests, the remainder of his property would be sold to establish an irrevocable trust (hereinafter, the Joseph McClure Trust). The Joseph McClure Trust had specific provisions for nomination of trustees, designation of beneficiaries, use of a qualified financial institution to comanage the trust, and instructions for distribution of the trust corpus to the remainder beneficiaries. The will provided that Joseph's brother, Cecil McClure, would be the income beneficiary of the trust. Upon Cecil's death, the trust corpus was to be distributed to the Lundberg Family Education Fund and to Cecil's children. Plaintiffs are Cecil's children.

¶ 11                            2. *The Cecil Q. McClure Irrevocable Trust*

¶ 12    The underlying complaint alleged that, in October 1998, Joseph's estate closed without a complete liquidation of his property. The complaint then alleged that the insured drafted the Cecil O. McClure Irrevocable Trust (hereinafter, the Cecil McClure Trust). The complaint further alleged that in December 1998, the insured attempted to unlawfully "decant" the Joseph McClure Trust by transferring Joseph's property to the Cecil McClure Trust. (Trust decanting refers to the act of "pouring" the principal of an irrevocable trust into a new trust with different terms. See *Ferri v. Powell-Ferri*, 72 N.E.3d 541, 546 (Mass. 2017); see also William R. Kuehn et al., *Survey of Illinois Law: Trusts and Estates*, 39 S. Ill. U. L.J. 647, 657-60 (2015).)

¶ 13    Similar to the Joseph McClure Trust, the Cecil McClure Trust made Cecil the income beneficiary with the Lundberg Family Education Fund and Cecil's children as the remainder beneficiaries. Nevertheless, the Cecil McClure Trust contained key differences such as (1) including an *in terrorem* clause, (2) eliminating the requirement to use a qualified financial institution as a cotrustee, (3) appointing the insured as a cotrustee, and (4) eliminating the requirement to sell Joseph's property. (An *in terrorem* clause is a provision in a trust document or a will that invalidates a gift to a beneficiary who unsuccessfully challenges the validity of the testamentary document. See *In re Estate of Lanterman*, 122 Ill. App. 3d 982, 985, 462 N.E.2d 46, 47-48 (1984); see also Gerry W. Beyer et al., *The Fine Art of Intimidating Disgruntled Beneficiaries With In Terrorem Clauses*, 51 SMU L. Rev. 225, 226-27 (1998).)

¶ 14                            3. *The Allegations of Wrongdoing*

¶ 15    In September 2010, Cecil McClure died. The underlying complaint alleged that the insured told the plaintiffs that the remainder beneficiaries would receive quarterly income distributions. Plaintiffs requested the trust corpus be liquidated and the proceeds distributed to the remainder beneficiaries. The complaint asserted that the insured denied this request because the real estate market was poor and because plaintiffs were not entitled to any distribution of trust corpus. Instead, the insured continued to administer the Cecil McClure Trust and give quarterly income distributions.

¶ 16    The underlying complaint alleged that the insured created a self-compensation scheme because the insured (1) included an *in terrorem* clause, (2) eliminated the requirement to use a qualified financial institution as a cotrustee, and (3) appointed himself as a cotrustee. The underlying complaint further asserted that the insured and others collected excessive fees while managing the trust.

¶ 17    Throughout the underlying complaint, plaintiffs alleged willful conduct by the insured. For example, count IV alleged that the insured "*willfully* refused to distribute the remaining trust

assets." (Emphasis added.) Count V alleged self-dealing by the insured, arguing that he refused to liquidate the trust corpus "in order to perpetuate [his] self-compensation *scheme*." (Emphasis added.) Count VI alleged that the insured *willfully* misinformed the plaintiffs in bad faith that they were not entitled to distribution of the trust corpus. Count VII alleged breach of trust, asserting that the insured "committed breach of trust by *willfully* disregarding the termination provision of the trust and refusing to distribute the trust assets." (Emphasis added.) Count VIII requested removal of the insured as trustee, arguing that he "*willfully* committed [a] serious breach of trust in failing to fulfill [his] fiduciary duties." (Emphasis added.)

¶ 18                                B. ISBA's Complaint for Declaratory Judgment

¶ 19      In September 2016, ISBA filed a complaint for declaratory judgment against the insured. ISBA conceded that the insured was covered under its professional liability insurance policy but alleged it had no duty to defend him based upon the allegations of the underlying complaint.

¶ 20                                1. *The Provisions of the ISBA Insurance Policy*

¶ 21      ISBA's insurance policy provides coverage for damages and claim expenses arising out of a "wrongful act," which the policy defines as "any actual or alleged negligent act, error, or omission in the rendering of or failure to render professional services." The policy notes that "professional services" includes working "as an administrator, *** trustee, or any other similar fiduciary activity." However, the policy explicitly excludes from coverage any claim "arising out of any criminal, dishonest, fraudulent or intentional act or omission."

¶ 22                                2. *ISBA's Claim and the Insured's Answer*

¶ 23      ISBA alleged it had no duty to defend because the insured's actions were dishonest, intentional, and fraudulent and therefore excluded from coverage. In November 2016, the insured filed an answer to ISBA's complaint, contending that ISBA had a duty to defend.

¶ 24                                C. The Motions for Judgment on the Pleadings

¶ 25      In March 2017, the insured filed a motion for a judgment on the pleadings, noting that an insurer has a duty to defend against an underlying complaint if the "allegations fall within, *or potentially within*, the policy's coverage." (Emphasis in original.) The insured conceded that this dispute "could be the result of intentional conduct." However, the insured contended that "to the extent that the allegations have any merit, they are much more likely to be the result of mere negligence." Thus, the insured contended ISBA had a duty to defend. In May 2017, ISBA filed a cross-motion for judgment on the pleadings, contending that the insured's actions as alleged in the underlying complaint constituted intentional conduct that was excluded from coverage.

¶ 26                                D. The Trial Court's Ruling

¶ 27      In June 2017, the trial court concluded that "read as a whole, the complaint herein in certain counts sounds in negligence such that [ISBA] has a duty to defend." The court therefore granted the insured's motion for judgment on the pleadings, denied ISBA's cross-motion, and entered judgment in favor of the insured.

¶ 28    This appeal followed.

¶ 29                              II. ANALYSIS

¶ 30    ISBA appeals, asserting that the trial court erred in granting judgment in favor of the insured because "the underlying [c]omplaint clearly alleged intentional conduct which is expressly excluded from coverage under the ISBA Mutual policy." We conclude that the insured's conduct, as alleged in the underlying complaint, is excluded from coverage.

¶ 31                            A. The Applicable Law
¶ 32                         1. *Judgment on the Pleadings*

¶ 33    Any party may move for judgment on the pleadings pursuant to section 2-615(e) of the Code of Civil Procedure. 735 ILCS 5/2-615(e) (West 2016). Judgment on the pleadings is proper when the pleadings disclose no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Allstate Property & Casualty Insurance Co. v. Trujillo*, 2014 IL App (1st) 123419, ¶ 15, 7 N.E.3d 110. In ruling on a motion for judgment on the pleadings, the trial court can only consider the facts apparent from the face of the pleadings, attachments to the pleadings, judicial admissions in the record, and matters subject to judicial notice. *Fagel v. Department of Transportation*, 2013 IL App (1st) 121841, ¶ 26, 991 N.E.2d 365; 735 ILCS 5/2-606 (West 2016).

¶ 34                        2. *An Insurer's Duty to Defend*

¶ 35    In a declaratory judgment action in which the issue is whether the insurer has a duty to defend, courts first look to the allegations in the underlying complaint and compare those allegations to the relevant provisions of the insurance contract. *Pekin Insurance Co. v. Precision Dose, Inc.*, 2012 IL App (2d) 110195, ¶ 30, 968 N.E.2d 664. If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer has a duty to defend. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455, 930 N.E.2d 1011, 1017 (2010). The insurer may refuse to defend only if it is clear from the face of the underlying complaint that the allegations fail to state facts that bring the cause within, or potentially within, coverage. *Illinois State Bar Ass'n Mutual Insurance Co. v. Cavenagh*, 2012 IL App (1st) 111810, ¶ 14, 983 N.E.2d 468.

¶ 36                   3. *Exclusionary Clauses for Intentional Conduct*

¶ 37    If an insurer relies on an exclusionary clause to deny coverage, it must be clear and free from doubt that the exclusionary clause applies. *American Zurich Insurance Co. v. Wilcox & Christopoulos, L.L.C.*, 2013 IL App (1st) 120402, ¶ 34, 984 N.E.2d 86; *Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 560, 734 N.E.2d 50, 56 (2000). The construction afforded to intentional act exclusions is to deny coverage when the insured has (1) intended to act and (2) specifically intended to harm a third party. *State Farm Fire & Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080, 1085, 732 N.E.2d 1094, 1098 (2000). The burden is on the insurer to prove that an exclusionary clause applies. *Country Mutual Insurance Co. v. Bible Pork, Inc.*, 2015 IL App (5th) 140211, ¶ 38, 42 N.E.3d 958.

¶ 38 An exclusionary clause for intentional conduct will not apply when a claim arises, or could potentially arise, from a negligent act or omission. *Lincoln Logan Mutual Insurance Co. v. Fornshell*, 309 Ill. App. 3d 479, 484, 722 N.E.2d 239, 242 (1999). However, phrases in the underlying complaint such as mislead, conceal, scheme, deceive, intentionally, or willfully are the " 'paradigm of intentional conduct and the antithesis of negligent actions.' " *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 760, 835 N.E.2d 890, 899 (2005) (quoting *Connecticut Indemnity Co. v. DER Travel Service, Inc.*, 328 F.3d 347, 351 (7th Cir. 2003)).

¶ 39                  4. *Construction of the Policy and the Standard of Review*

¶ 40 The primary objective when construing the language of an insurance policy is to ascertain and enforce the intentions of the parties as expressed in their agreement. *Pekin Insurance Co.*, 2012 IL App (2d) 110195, ¶ 31. Terms that are clear and unambiguous will be given their plain and ordinary meaning. *Id.* Ambiguous provisions that limit or exclude coverage will be interpreted liberally in favor of the insured. *Id.* If the terms of an insurance policy are susceptible to more than one reasonable meaning, a court should strictly construe those terms against the insurer and in favor of the insured. *Id.* Courts will construe the policy as a whole and consider the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *Wilson*, 237 Ill. 2d at 456. The construction of an insurance policy is a question of law reviewed *de novo*. *Cavenagh*, 2012 IL App (1st) 111810, ¶ 12. Likewise, a trial court's granting of a motion for judgment on the pleadings is reviewed *de novo*. *Trujillo*, 2014 IL App (1st) 123419, ¶ 16.

¶ 41                  B. This Case

¶ 42 On appeal, ISBA argues that the underlying complaint clearly alleged intentional conduct that is excluded from its policy. The insured counters that "to the extent that the allegations *** have any merit[,] they are just as likely, if not more likely, to be the result of professional negligence." Thus, the insured contends that as long as plaintiff's complaint could be based in negligence, ISBA has a duty to defend because the allegations could *potentially* fall within coverage. We conclude that the insured's conduct, as alleged in the underlying complaint, is excluded from coverage. See *American Zurich Insurance*, 2013 IL App (1st) 120402, ¶ 34.

¶ 43                  1. *Intentional Conduct*

¶ 44 The underlying complaint alleged that the insured "*willfully* refused" to distribute the trust corpus "in order to perpetuate their self-compensation *scheme*." (Emphasis added.) The complaint further alleged that the insured "[*w*]*ilfully*" misinformed the plaintiffs that they were not entitled to the trust corpus upon the death of Cecil McClure. (Emphasis added.) Likewise, the complaint alleged that the insured "*willfully*" committed a serious breach of trust by failing to fulfill his fiduciary duty. (Emphasis added.) The complaint also included allegations of bad faith.

¶ 45 Phrases in the underlying complaint such as mislead, conceal, scheme, deceive, intentionally, or willfully are the "paradigm of intentional conduct and the antithesis of negligent actions." (Internal quotation marks omitted.) *Caremark Rx, Inc.*, 359 Ill. App. 3d at 760. Accordingly, the allegations in the underlying complaint could not be the result of mere professional negligence. Rather, these allegations denote intentional conduct, which is

excluded from coverage. See *id.*

¶ 46                                    2. *Intentional Misconduct*

¶ 47    As mentioned earlier, ISBA's insurance policy provides coverage for damages and claim expenses arising from "any actual or alleged negligent act, error, or omission in the rendering of or failure to render professional services." The policy explicitly excludes from coverage any claim "arising out of any criminal, dishonest, fraudulent or intentional act or omission." This court has previously discussed intentional act exclusions, as follows:

> "The construction generally afforded to intentional act exclusions is to deny coverage where the insured has (1) intended to act and (2) specifically intended to harm a third party. This construction is the most logical interpretation and best represents the parties' intentions." *Leverton*, 314 Ill. App. 3d at 1085.

¶ 48    The First District has explained that "[t]he word 'intent' for purposes of exclusionary clauses in insurance policies denotes that the actor desires to cause the consequences of his action or believes that the consequences are substantially certain to result from it." *Aetna Casualty & Surety Co. v. Freyer*, 89 Ill. App. 3d 617, 620, 411 N.E.2d 1157, 1159 (1980). This court has likewise concluded that "intentional act or omission" means (1) the insured intended to cause the *consequence* of his act or omission or (2) believed that the *consequence* of his act or omission was substantially certain to result. See *Leverton*, 314 Ill. App. 3d at 1086; see also *Freyer*, 89 Ill. App. 3d at 620. Essentially, exclusionary clauses for intentional conduct apply to *intentional misconduct*. See *Freyer*, 89 Ill. App. 3d at 620. However, an exclusionary clause for intentional conduct does not apply merely because an insured *intended* to act. *Leverton*, 314 Ill. App. 3d at 1086.

¶ 49    Construing "intentional act or omission" to mean "intentional misconduct" is also supported by the doctrine of *noscitur a sociis*. See *People v. Qualls*, 365 Ill. App. 3d 1015, 1020, 851 N.E.2d 767, 771 (2006). This doctrine holds that a court may determine the meaning of a word by examining the meaning and context of the surrounding words. *Warren v. Lemay*, 144 Ill. App. 3d 107, 113, 494 N.E.2d 206, 209 (1986); see Stephen J. Safranek, *Scalia's Lament*, 8 Tex. Rev. L. & Pol. 315, 340-42 (2004). In this case, the policy states that it does not apply to a claim "arising out of any criminal, dishonest, fraudulent or intentional act or omission" committed by the insured. Thus, the phrase "intentional act or omission" is within the broader context of an exclusionary clause seeking to deny coverage for criminal and dishonest acts.

¶ 50    Finally, the policy sought to provide coverage for negligent errors that arise during the practice of law while denying coverage for criminal, dishonest, and fraudulent conduct. As such, construing "intentional act or omission" to mean "intentional misconduct" is consistent with the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *Wilson*, 237 Ill. 2d at 456.

¶ 51    In this case, the underlying complaint alleged that the insured unlawfully and without authority decanted the Joseph McClure Trust by transferring trust property to the newly created Cecil McClure Trust. Though mostly identical, the Cecil McClure Trust had materially different terms such as (1) an *in terrorem* clause, (2) no requirement to use a qualified financial institution as cotrustee, and (3) including the insured as a cotrustee. Plaintiffs alleged that the insured intentionally made these changes to establish a self-compensation scheme. These

allegations clearly allege intentional misconduct, which is excluded from coverage. Further, this allegation of intentional misconduct could not be the result of mere negligence.

¶ 52    Accordingly, we conclude that the insured's conduct, as alleged in the underlying complaint, is excluded from coverage. See *American Zurich Insurance*, 2013 IL App (1st) 120402, ¶ 34; see also *Illinois State Bar Ass'n Mutual Insurance Co. v. Mondo*, 392 Ill. App. 3d 1032, 1039, 911 N.E.2d 1144, 1151 (2009). Therefore, ISBA had no duty to defend the insured in the underlying action.

¶ 53                                III. CONCLUSION

¶ 54    For the reasons stated, we reverse the trial court's judgment and enter judgment in favor of ISBA on its motion for judgment on the pleadings.

¶ 55    Reversed; judgment entered for ISBA.