NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 190757-U

NOS. 4-19-0757, 4-19-0785 cons.

FILED
September 16, 2020
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| ACCLAIM RESOURCE PARTNERS, LLC; | ) | No. 17MR710 |
| KAHUNA BUSINESS HOLDINGS, LLC; KEVIN G. | ) | |
| MAY; DEAN R. KOHN; TAMMY COOK; BRYAN | ) | |
| BAUER; FRANK LUNN; F. SCOTT RATHBUN; | ) | |
| INTERINSURANCE EXCHANGE OF THE | ) | |
| AUTOMOBILE CLUB, and KAHUNA BUSINESS | ) | |
| GROUP, INC., | ) | |
| Defendants | ) | |
| (Acclaim Resource Partners, LLC, and Interinsurance | ) | Honorable |
| Exchange of the Automobile Club, Defendants- | ) | Paul G. Lawrence, |
| Appellants). | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices DeArmond and Holder White concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, concluding the trial court properly granted plaintiff's motion for summary judgment.

¶ 2          These consolidated cases involve a dispute about insurance coverage. The trial court concluded that the insurer had no duty to defend the insured because the underlying litigation for which coverage was sought was a mere fee dispute and fell outside of the policy's coverage. Defendants, Acclaim Resource Partners, LLC, and Interinsurance Exchange of the Automobile Club, appeal, contending that the action was not a fee dispute but instead a claim regarding professional services which would trigger coverage. We disagree and affirm the trial court's

judgment.

¶ 3                                      I. BACKGROUND

¶ 4                                  A. The Underlying Action

¶ 5          In October 2017, Interinsurance Exchange of the Automobile Club ("Exchange") sued Acclaim Resource Partners ("Acclaim") in California state court (the "Underlying Action"), seeking payment of additional sums pursuant to a previously established subrogation services agreement ("Contract"), which Exchange and Acclaim entered into in April 2014. In April 2015, the Contract had been modified to grant Acclaim signature authority for joint checks received as part of the settlement of subrogation claims. Following the modification, Acclaim cashed the subrogation recoveries, deducted its fees, and sent the balance of the recoveries to Exchange.

¶ 6          In October 2018, Exchange filed its second amended complaint (hereafter "SAC"). According to the SAC, the Contract dictated that (1) Exchange would refer subrogation matters to Acclaim and (2) Acclaim would then perform subrogation services for Exchange. The SAC further alleged that Acclaim "endorsed, cashed, and deposited" the subrogation settlement checks "and each time they did so they shorted [Exchange] in such remittance of its money."

¶ 7          Exchange also alleged in the SAC that multiple times from January 2016 through May 2017, Acclaim's employees sent erroneous reports to Exchange, which resulted in Acclaim's shorting Exchange in the amount of money owed to it.

¶ 8          The SAC contained several causes of action and grounds for relief. Relevant to this appeal is its claim for negligence. The SAC alleged that Acclaim owed Exchange "a duty to detect and monitor irregularities in [Acclaim's] books and accounts" in relation to the subrogation services and the resulting payments. Exchange alleged that Acclaim failed to exercise reasonable care in its bookkeeping and breached its duty by (1) "not monitoring or detecting irregularities in

- 2 -

the books," (2) "failing to segregate [Exchange's] money into a discreet and earmarked trust account," (3) "failing to secure a surety bond," (4) "failing to have an adequate system in place to prevent commingling or dwindling of client funds," (5) "failing to detect and monitor settlement collection funds oddities and irregularities," (6) "failing to detect and prevent theft by employees and officers," (7) "failing to recover all amounts due [to Exchange] in a professional manner," (8) "failing to issue timely remittance reports to [Exchange]," (9) "failing to provide competent professional subrogation services," and (10) "failing to investigate, evaluate and settle all claims in a professional manner." Exchange sought $3,145,229.40 in damages.

¶ 9        After Exchange initially filed suit, Acclaim tendered the Underlying Action to RLI for coverage under the "Target Professionals Liability Policy" ("Policy"), which we discuss below. In November 2017, RLI informed Acclaim that it was denying coverage for the Underlying Action because, among other reasons, the Underlying Action did not involve allegations of a Wrongful Act as defined by the Policy.

¶ 10                          B. The Declaratory Judgment Complaint

¶ 11        In November 2017, RLI filed a complaint for declaratory judgment in which it named Acclaim, Kahuna Business Holdings LLC, Kevin G. May, Dean R. Kohn, Tammy Cook, Bryan Bauer, Frank Lunn, F. Scott Rathbun, and Exchange as defendants. The complaint sought a declaration that RLI had no duty to defend or indemnify the Underlying Action pursuant to the Policy. Following Exchange's filing of the SAC in October 2018, RLI filed an amended complaint for declaratory judgment in January 2019.

¶ 12        RLI's complaint asserted 11 alternative bases for why it did not have a duty to defend pursuant to the Policy, each separated into its own count. The complaint alleged that RLI issued the Policy to Acclaim for a period from April 21, 2017, to April 21, 2018, a copy of which

was attached to the complaint. The Policy stated that RLI "will pay on behalf of the Insured \*\*\* Damages \*\*\* that the Insured shall become legally obligated to pay because of Claims first made against the Insured during the Policy Period \*\*\* for Wrongful Acts \*\*\*." The Policy further stated that RLI "has the right and duty to defend any Claim to which this insurance applies, even if the allegations of the Claim are groundless, false or fraudulent."

¶ 13        The Policy defined "Claim" to include "any judicial proceeding \*\*\* seeking to hold [an] Insured responsible for a Wrongful Act." The definition for "Damages" included "monetary judgments or settlement, including but not limited to compensatory damages," but excluded any "return, reduction or dispute over any fees, deposits, expenses, costs or commissions charged or collected by the Insured." The definition for "Wrongful Act" includes "any actual or alleged error, omission or negligent act, committed solely in the rendering of or failure to render Professional Services by an Insured." The definition of "Professional Services" includes adjuster services which includes "investigating and evaluating claims" and "negotiating settlement of claims including property values, damages and depreciation."

¶ 14                      C. RLI's Motion for Summary Judgment

¶ 15        In April 2019, RLI filed a motion for summary judgment, arguing that it was entitled to summary judgment because the conduct allegedly committed by Acclaim did not constitute a wrongful act as defined in the Policy. RLI contended that for conduct to be a wrongful act as defined by the Policy, it would need to be committed in the rendering of or failure to render professional services—in this case, adjuster services. RLI argued that because the dispute between Exchange and Acclaim was merely a fee dispute, it was not covered by the Policy.

¶ 16        In June 2019, Exchange filed its response to RLI's motion for summary judgment, and the remaining defendants joined in Exchange's response. Defendants argued summary

- 4 -

judgment was improper because, among other reasons, the Underlying Action included allegations of a wrongful act that involved Acclaim's professional services. They argued that the Underlying Action was not "merely a fee dispute," as RLI characterized it but, instead, included a claim for professional negligence, in which Exchange alleged that Acclaim failed to follow industry standards by failing to investigate, evaluate, and settle in a professional manner all subrogation claims that Acclaim was pursuing on behalf of Exchange.

¶ 17    In September 2019, the trial court conducted a hearing on RLI's motion for summary judgment and ruled in RLI's favor. The court characterized the Underlying Action as "merely a fee dispute." The court granted summary judgment for both the duty to defend and duty to indemnify.

¶ 18    This appeal followed.

¶ 19                              II. ANALYSIS

¶ 20    Defendants appeal, arguing, among other things, that the trial court erred by concluding that the Underlying Action is a fee dispute not covered by the Policy instead of a claim concerning professional services. We disagree and affirm the trial court's judgment.

¶ 21              A. The Applicable Law and the Standard of Review

¶ 22                          1. *Summary Judgment*

¶ 23    Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). When examining whether a genuine issue of material fact exists, a court construes the evidence in the light most favorable to the nonmoving party and strictly against the moving party. *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22, 131 N.E.3d 488.

¶ 24        2. *The Duty to Defend*

¶ 25        "In a declaratory judgment action in which the issue is whether the insurer has a duty to defend, courts first look to the allegations in the underlying complaint and compare those allegations to the relevant provisions of the insurance contract." *Illinois State Bar Ass'n Mutual Insurance Co. v. Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 35, 103 N.E.3d 1087. "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455, 930 N.E.2d 1011, 1017 (2010). The allegations in the underlying complaint are construed liberally and are not required to be in any particular form. *Empire Indemnity Insurance Co. v. Chicago Province of the Society of Jesus*, 2013 IL App (1st) 112346, ¶ 35, 990 N.E.2d 845. "The question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action." *International Insurance Co. v. Rollprint Packaging Products, Inc.*, 312 Ill. App. 3d 998, 1007, 728 N.E.2d 680, 688 (2000). Moreover, if the underlying complaint alleges multiple theories of recovery against the insured, the duty to defend arises even if only one such theory is potentially within the coverage of the policy. *Empire Indemnity Insurance Co.*, 2013 IL App (1st) 112346, ¶ 34.

¶ 26        3. *Construction of the Policy*

¶ 27        "The primary objective when construing the language of an insurance policy is to ascertain and enforce the intentions of the parties as expressed in their agreement." *Illinois State Bar Ass'n Mutual Insurance Co.*, 2018 IL App (4th) 170548, ¶ 40. If the terms of the policy are clear and unambiguous, they are given their plain and ordinary meaning. *Id.*; *Pekin Insurance Co.*, 237 Ill. 2d at 455-56. Any ambiguities or provisions that limit or exclude coverage are construed strictly against the insurer who drafted the policy and liberally in favor of the insured. *Illinois State*

*Bar Ass'n Mutual Insurance Co.*, 2018 IL App (4th) 170548, ¶ 40. "A court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." (Internal quotation marks omitted.) *Pekin Insurance Co.*, 237 Ill. 2d at 456. "[C]ourts give 'little weight to the legal label that characterizes the underlying allegations.' [Citation.]" *Farmers Automobile Insurance Ass'n v. Danner*, 2012 IL App (4th) 110461, ¶ 39, 967 N.E.2d 836.

¶ 28                     4. *The Standard of Review*

¶ 29          A trial court's entry of summary judgment is reviewed *de novo*. *Beaman*, 2019 IL 122654, ¶ 22. Similarly, an appellate court reviews *de novo* a trial court's construction of an insurance policy. *Illinois State Bar Ass'n Mutual Insurance Co.*, 2018 IL App (4th) 170548, ¶ 40.

¶ 30                          B. This Case

¶ 31                    1. *The Parties' Arguments*

¶ 32          Defendants argue that the Underlying Action alleges a wrongful act as covered by the Policy because the Underlying Action alleges that Acclaim was negligent in the rendering of professional services. The Policy defines the term professional services to include adjuster services, which in turn is defined as including "investigating claims" and "negotiating settlement of claims." Defendants state that the Underlying Action alleged that negligent acts took place in the rendering of adjuster services and claims this "is all that is required in order to allege a Wrongful Act under the RLI Policy."

¶ 33          Defendants further argue that the trial court came to the wrong conclusion when it decided there was no wrongful act and characterized the action merely as a fee dispute. Defendants contend that (1) when determining whether a duty to defend exists under Illinois law, the complaint must be construed liberally and (2) because the Underlying Action contained an allegation of

professional negligence, RLI therefore had a duty to defend Acclaim.

¶ 34 RLI agrees that (1) the Policy covered only negligence in relation to professional services and (2) professional services included adjuster services. However, RLI notes that the adjuster services defined by the Policy are "investigating and evaluating claims" and "negotiating settlement of claims including property values, damages and depreciation." RLI argues that Exchange has consistently failed to identify any factual allegations against Acclaim in the Underlying Action that would show errors or omissions either while (1) investigating or evaluating claims or (2) negotiating settlement of claims.

¶ 35 RLI further argues that conclusory allegations of negligence in the Underlying Action do not create a duty to defend because (1) the mere label of the action as one for "professional negligence" is insufficient when there are no alleged facts showing that any claims of negligence involved adjuster services as required, (2) the alleged negligence was in relation to payment of fees owed, not negligence in the furnishing of adjuster services, and (3) the allegations that Exchange claims trigger coverage were not included in its initial complaint and were not even added until nearly a year after RLI had filed its initial declaratory judgment complaint. RLI argues that Illinois case law states that fee disputes are not considered to have arisen from professional services. See *Continental Casualty Co. v. Donald T. Bertucci, Ltd.*, 399 Ill. App. 3d 775, 926 N.E.2d 833 (2010).

¶ 36 2. *A Fee Dispute, Not Professional Services*

¶ 37 We agree with RLI and conclude that the Underlying Action does not involve negligence regarding professional services. In so concluding, we note that our analysis of the pleadings is driven by the substance, rather than the mere labels, of those pleadings. "[C]ourts give 'little weight to the legal label that characterizes the underlying allegations.' [Citation.]" *Danner*,

2012 IL App (4th) 110461, ¶ 39 (quoting Lexmark International, Inc. v. Transportation Insurance Co., 327 Ill. App. 3d 128, 135, 761 N.E.2d 1214, 1221 (2001)).

¶ 38         The Policy defines adjuster services as "investigating claims" and "negotiating settlement of claims." Exchange has failed to point out any factual allegations in the Underlying Action which would show negligence in the performance of adjuster services, and we can find none. As RLI explains, the alleged facts consist merely of a description of the subrogation services contract between Acclaim and Exchange and a summary of monthly remittance reports sent by Acclaim to Exchange that were the basis for the allegations that additional amounts were owed.

¶ 39         None of those factual allegations appear to be related to investigating claims or negotiating settlement of claims, as would be required to support a claim of professional negligence. Instead, all of the alleged facts pertain to the handling and remittance of fees, which would take place *after* any investigating or negotiating settlement of claims.

¶ 40         Even after RLI explicitly stated in its response brief that "Exchange fails to point out any such factual allegations because they are simply not there," Exchange, in its reply brief, *still* does not point out any such allegations. Instead, Exchange merely argues that even "minimal or bare-bones" allegations are entitled to coverage unless the possibility of coverage is precluded or negated.

¶ 41         Although we agree with Exchange that a vague or ambiguous situation would favor the insured, we do not agree that this is such a situation. Again, we analyze the underlying complaint for its substance, not for its mere labels. Accordingly, we conclude that while the Underlying Action may include claims that are *described* as negligence in performance of adjuster services, it is clear that the alleged conduct that forms the basis for Exchange's claim does not qualify as adjuster services. Because the substance of the claim carries the day, we conclude that

RLI has no duty to defend.

¶ 42                                    III. CONCLUSION

¶ 43          For the reasons stated, we affirm the trial court's judgment.

¶ 44          Affirmed.