2022 IL App (2d) 210634
No. 2-21-0634
Opinion filed July 7, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| OWNERS INSURANCE COMPANY, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 21-MR-381 |
| | ) | |
| DON McCUE CHEVROLET, INC., | ) | Honorable |
| | ) | Bonnie M. Wheaton, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices McLaren and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Owners Insurance Company (insurer), appeals from the judgment of the circuit court of Du Page County, granting summary judgment in favor of defendant, Don McCue Chevrolet, Inc. (insured). The trial court ruled that an intentional-acts exclusion in the parties' insurance policy did not exclude coverage for the expenses incurred by the insured in defending an underlying consumer-fraud complaint brought by a former customer, Julio Salas. Because the underlying complaint alleged only intentional misconduct, the exclusion applied. Therefore, we reverse the judgment and remand the case to the trial court with directions to enter summary judgment in the insurer's favor.

¶ 2                                I. BACKGROUND

¶ 3    Salas's one-count complaint against the insured in the underlying lawsuit alleged a violation of the Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 *et seq.* (West 2020)). Salas alleged as follows. Salas and the insured entered into a written retail installment contract for Salas to purchase a new 2020 Chevrolet truck from the insured. Per the sales contract, Salas provided $5000 cash and his 2018 Chevrolet vehicle as a down payment. Salas and the insured agreed that the sales contract would be assigned to a finance company or bank. If the insured was unable to assign the contract, the transaction would not be completed, Salas would return the new truck, and the insured would return to Salas the $5000 and the 2018 vehicle. The insured was unable to obtain financing for the purchase. Per the insured's demand, Salas returned the new truck. However, the insured "refused and continues to refuse" to return either the $5000 or the 2018 vehicle.

¶ 4    After setting forth these allegations, the complaint quoted section 2C of the Act (815 ILCS 505/2C (West 2020)), which provides, in pertinent part, that if a seller rejects the credit application of the buyer, the seller must return any down payment, including money, goods, or chattels. Section 2C further provides that the retention of any or all of the down payment as a fee for a credit inquiry, as liquidated damages to cover depreciation of the merchandise that was the subject of the sale, or for any other purpose, is an "unlawful practice within the meaning of [the] Act." 815 ILCS 505/2C (West 2020).

¶ 5    The complaint further alleged that (1) Salas's purchase of the new truck was "akin to all consumers' actions and thus concern[ed] all consumers," (2) the insured's "refusal to adhere to the mandates of the [Act] involve[d] consumer protection concerns," (3) the insured's conduct "occurred in the course of conduct involving trade and/or commerce," (4) the insured violated section 2C by refusing to return Salas's down payment once financing could not be arranged,

(5) the insured's "deception" damaged Salas, and (6) Salas's requested relief (damages, attorney fees, litigation expenses, costs, and other appropriate relief) was "in the best interest of all consumers," as it would "discourage [the insured] from engaging in conduct similar to that alleged to be fraudulent in [this complaint]."

¶ 6    The insured submitted a claim under the policy for expenses incurred in the defense of the underlying lawsuit. The insured based its claim on a policy provision entitled "Customer Complaint Defense Reimbursement Coverage" (defense-reimbursement provision). That provision stated in relevant part that the insurer would reimburse the insured for reasonable costs and expenses incurred in defending a "customer complaint suit." A "customer complaint" was defined as a "customer's claim that such customer sustained loss or damage as a result of [the insured's]: 1. Acts; or 2. Failures to act in [the insured's] selling, servicing or repairing operations." Coverage was excluded for any suit resulting from "[a]ctual or alleged criminal, malicious or intentional acts" committed by the insured (intentional-acts exclusion).

¶ 7    The insurer declined the insured's claim for coverage of defense expenses. The insured relied on the intentional-acts exclusion.

¶ 8    The insurer filed a declaratory judgment action, alleging that it was not responsible for reimbursing the insured for any expenses related to the insured's defense of Salas's lawsuit. The insurer alleged that there was no coverage because "[t]he decisions by [the insured] to not refund Salas the $5000 down payment or to return the 2018 Chevrolet Traverse [were] intentional acts" that fell within the intentional-acts exclusion.

¶ 9    The parties filed cross-motions for summary judgment. The insured contended that the underlying lawsuit did not allege criminal or malicious acts or acts intended to cause harm to Salas. The insurer asserted that, because (1) the complaint alleged that the insured's acts were

"fraudulent" and (2) fraud is an intentional tort in Illinois, the intentional-acts exclusion applied and the insurer was not obligated to reimburse the insured for the expenses incurred in the defense of the underlying lawsuit.

¶ 10   The trial court denied the insurer's motion and granted the insured's motion, ruling that the insurer had a duty under the defense-reimbursement provision to provide coverage for the insured's expenses incurred in defending the underlying lawsuit. In doing so, the court relied, in part, on the insured's answer and other materials in the underlying lawsuit.

¶ 11   The insurer filed this timely appeal.

¶ 12                                    II. ANALYSIS

¶ 13   On appeal, the insurer contends that the intentional-acts exclusion applies because (1) the underlying complaint alleges "fraudulent misconduct" alone and (2) fraud is an intentional act that falls within the scope of the exclusion. The insured responds that it is entitled to coverage because the underlying complaint did not allege any acts that were criminal, malicious, or intentional misconduct.

¶ 14   Summary judgment is appropriate only if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Hunt v. State Farm Mutual Insurance Co.*, 2013 IL App (1st) 120561, ¶ 15. Where cross-motions for summary judgment are filed in an insurance coverage case, the parties acknowledge that there exist no questions of material fact but only questions of law regarding the construction of the policy. *Hunt*, 2013 IL App (1st) 120561, ¶ 15. We review *de novo* a trial court's decision on a summary judgment motion. *Hunt*, 2013 IL App (1st) 120561, ¶ 15.

¶ 15    In a declaratory judgment action where the issue is whether the insurer has a duty to defend, the court looks to the allegations in the underlying complaint and compares them to the relevant provisions of the insurance contract. *Illinois State Bar Ass'n Mutual Insurance Co. v. Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 35. If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer has a duty to defend. *Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 35. The insurer may refuse to defend only if it is clear from the face of the complaint that the allegations fail to state facts that bring the cause within, or potentially within, coverage. *Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 35.

¶ 16    If an insurer relies on an exclusionary clause to deny coverage, it must be free and clear from doubt that the clause applies. *Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 37. An exclusion for intentional acts is construed to exclude coverage when the insured has (1) intended to act and (2) specifically intended to harm a third party. *Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 37. The burden is on the insurer to prove that an exclusionary clause applies. *Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 37.

¶ 17    An exclusionary clause for intentional conduct will not apply when a claim arises, or could potentially arise, from a merely negligent act or omission. *Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 38. Phrases in the underlying complaint such as "mislead," "conceal," "scheme," "deceive," "intentionally," or "willfully" are the "paradigm of intentional conduct and the antithesis of negligent actions." (Internal quotation marks omitted.) *Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 38.

¶ 18    The following principles govern our interpretation of the insurance policy in this case:

"The primary objective when construing the language of an insurance policy is to ascertain and enforce the intentions of the parties as expressed in their agreement. [Citation.] Terms that are clear and unambiguous will be given their plain and ordinary meaning. [Citation.] Ambiguous provisions that limit or exclude coverage will be interpreted liberally in favor of the insured. [Citation.] If the terms of an insurance policy are susceptible to more than one reasonable meaning, a court should strictly construe those terms against the insurer and in favor of the insured. [Citation.] Courts will construe the policy as a whole and consider the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. [Citation.]" *Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 40.

¶ 19 As for the underlying complaint, little weight is given to the legal label that characterizes the allegations. *Illinois State Bar Ass'n Mutual Insurance Co. v. Mondo*, 392 Ill. App. 3d 1032, 1037 (2009). Rather, the inquiry focuses on whether the alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy. *Mondo*, 392 Ill. App. 3d at 1037. The complaint must be read as a whole to assess its true nature. *Mondo*, 392 Ill. App. 3d at 1037.

¶ 20 We look first at the language of the relevant policy provisions. The parties do not dispute that the underlying complaint constituted a "customer complaint" within the meaning of the defense-reimbursement provision. We agree, as a "customer complaint" is defined as a customer's claim that he sustained loss or damage resulting from the insured's "[a]cts" or "[f]ailures to act" relative to the sale of a vehicle.

¶ 21 However, the parties disagree as to whether the intentional-acts exclusion applies to *any* intentional acts or strictly to intentional *misconduct*. We hold that it is the latter.

¶ 22    The word "intent" for purposes of an exclusionary clause in an insurance policy denotes that the actor desires to cause the consequences of his or her action or believes that the consequences are substantially certain to result. *Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 48. However, exclusionary clauses for intentional conduct apply to intentional *misconduct*, not merely intentional acts. *Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 48.

¶ 23    We agree with the principles of *Leighton Legal Group, LLC*. However, even the Fourth District did not rely simply on its generalization about exclusionary clauses for intentional conduct; it also examined the specific language of the policy at issue. The court applied the *noscitur a sociis* doctrine, which states that a court may determine the meaning of a word by examining the meaning and context of the surrounding words. *Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 49. We apply the doctrine here as well. In the intentional-acts exclusion, "intentional" is accompanied by "criminal" and "malicious," both of which denote misconduct. Thus, we interpret "intentional" as meaning intentional *misconduct*.

¶ 24    We next consider whether the allegations of the underlying complaint raise a claim of only intentional misconduct. If they do, then the complaint falls within the scope of the exclusion, and the insurer is not obligated to reimburse the insured for expenses related to defending the underlying lawsuit.

¶ 25    Before we address that issue, we note that the parties disagree as to whether the trial court properly considered the insured's answer and other materials in deciding whether the exclusion applied in the underlying lawsuit. It is well established that a court is limited to the allegations of the underlying complaint in deciding whether coverage applies. See *Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 35. The insured's reliance on *Pekin Insurance Co. v. Wilson*, 237 Ill.

2d 446 (2010), is misplaced. In *Wilson*, the insured was sued for assault and battery, and the insurer sought to invoke an intentional-acts exclusion. *Wilson*, 237 Ill. 2d at 449-51. Because there was a policy exception to the intentional-acts exclusion based on self-defense, the supreme court held that it was proper to consider the insured's counterclaim alleging that he acted in self-defense. *Wilson*, 237 Ill. 2d at 463. Here, unlike in *Wilson*, the insured invoked no exception to the exclusion. The mere denial of liability by the insured in the underlying action does not fall within the narrow exception created by *Wilson*. Thus, the trial court here erred in looking beyond the allegations of the underlying complaint.

¶ 26    We hold that the allegations of the underlying complaint fell within the policy exclusion. Section 2 of the Act is a general prohibition on "[u]nfair methods of competition and unfair or deceptive acts or practices *** in the conduct of any trade or commerce." 815 ILCS 505/2 (West 2020). In addition to this general prohibition, the Act sets forth a series of "specifically prohibited acts *** [each] describ[ing] a situation where a buyer is being harmed by overreaching or fraudulent conduct." *Laughlin v. Evanston Hospital*, 133 Ill. 2d 374, 390 (1990); see also *Stewart v. Amoco Oil Co.*, 72 Ill. App. 3d 330, 337 (1979) (the Act "expressly ma[kes] certain practices unlawful and create[s] a liability on the seller to the consumer"). Section 2C is one of the sections that prohibits a certain practice. Section 2C "mandates that a prospective merchandise purchaser seeking credit approval from the seller must receive a complete refund of any down payment made if [his or] her credit application is rejected." *Jones v. William Buick, Inc.*, 337 Ill. App. 3d 339, 340 (2003).

¶ 27    We determine that the underlying complaint alleged exclusively intentional misconduct, not negligence. Although the complaint generally referenced the insured's "conduct" without such modifiers as "intentional" or "willful," the specific conduct on which Salas based his section 2C

claim was that, after the insured was unable to obtain financing for the sale, the insured (1) "refused and continues to refuse" to return either the $5000 or the 2018 vehicle and (2) "refus[ed] to adhere to the mandates of the [Act]." The use of the term "refuse" clearly implied intentional or willful misconduct. See Webster's Third New International Dictionary 1910 (1993) (defining "refuse" as "a positive unwillingness to do or comply with" "something asked, demanded, [or] expected"). Also, Salas alleged "fraudulent" conduct and "deception" by the insured, indicating further that the claim was based on intentional misconduct. See *Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 45 (words such as "mislead," "conceal," "scheme," "deceive," "intentionally," or "willfully" are emblematic of intentional conduct). When read as a whole, the underlying complaint alleged an exclusively intentional violation of the Act, as opposed to a negligent one. Thus, the intentional-acts exclusion in the policy applied.[1]

¶ 28                                    III. CONCLUSION

¶ 29     For the reasons stated, we reverse the judgment of the circuit court of Du Page County granting summary judgment in the insured's favor on the insurer's declaratory judgment complaint. We remand the case to the trial court with directions to enter summary judgment in the insurer's favor on the complaint.

¶ 30     Reversed and remanded with directions.

---

[1]We note that, should Salas's claim or claims in the underlying action morph into one for negligence, the insured would remain free to seek coverage under the policy.

*Owners Insurance Co. v. Don McCue Chevrolet, Inc.*, 2022 IL App (2d) 210634

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 21-MR-381; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| **Attorneys for Appellant:** | Robert Marc Chemers, Richard M. Waris, David N. Larson, and Scott L. Howie, of Pretzel & Stouffer, Chtrd., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Michael T. Navigato, of Bochte, Kuzniar & Navigato, P.C., of St. Charles, for appellee. |