NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 210023-U

NOS. 4-21-0023, 4-21-0024 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 28, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| FARMERS INSURANCE EXCHANGE, | ) | Appeal from the |
|     Plaintiff and Counterdefendant- | ) | Circuit Court of |
|     Appellee, | ) | McLean County |
|     v. | ) | |
| VIDYASAGAR CHEEKATI, VIJAYA | ) | |
| KASIREDDY, CYNTHIA DONNELLY, DEANA | ) | |
| TODI, a/k/a BINA TODI, APEX PROPERTIES, INC, | ) | |
| a/k/a REMAX CHOICE d/b/a JP FINLEY & REMAX | ) | No. 19MR129 |
| RISING, | ) | |
|     Defendants | ) | |
| (Vidyasagar Cheekati and Vijaya Kasireddy, | ) | |
| Defendants and Counterplaintiffs-Appellants; Cynthia | ) | Honorable |
| Donnelly, Defendant-Appellant). | ) | Paul G. Lawrence, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Knecht and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the trial court did not err in granting
plaintiff's motion for judgment on the pleadings because there was no
genuine issue of material fact and, as a matter of law, plaintiff had no duty to
defend its insured since the resident exclusion applied to preclude coverage;
plaintiff is not estopped from disclaiming coverage under the exclusion; and the
trial court did not err in dismissing defendants' counterclaim alleging violations
of section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2018)).

¶ 2    Defendant, Cynthia Donnelly, sued her landlords after she injured herself when an

allegedly defective stair collapsed under her at the rental property. The landlords, defendants

Vidyasagar Cheekati and Vijaya Kasireddy (collectively "the Insureds"), informed their insurer,

plaintiff Farmers Insurance Exchange (Farmers), of the injury and the lawsuit, but Farmers disclaimed coverage, claiming two policy exclusions precluded coverage for Donnelly's injuries. Consequently, Farmers refused to defend or indemnify the Insureds in Donnelly's lawsuit and sought declaratory judgment, stating it rightly disclaimed coverage and, therefore, need not defend the Insureds. The Insureds responded with various counterclaims and affirmative defenses. Farmers moved to dismiss one counterclaim and strike the Insureds' jury demand, which the trial court granted. The litigation culminated in a hearing on Farmers' motion for judgment on the pleadings, which the trial court also granted. The Insureds and Donnelly appeal.

¶ 3                                    I. BACKGROUND

¶ 4         In 2016 and 2017, the Insureds owned a home located at 23 Yotzonot Drive, Bloomington, Illinois 61704, in McLean County. They insured the property through Farmers with a homeowners policy, No. 93783-58-33, effective from February 27, 2016, to February 27, 2017. Meanwhile, unable to sell the property, the Insureds entered into a two-year lease agreement with Cynthia Donnelly in November 2016, whereby Donnelly rented the insured home as a tenant. On January 25, 2017, Donnelly allegedly sustained physical injuries while in the rented home when a defective staircase collapsed under her. The Insureds informed their Farmers agent, Geoffrey Abraham, via telephone about Donnelly's injury in April 2017. Abraham instructed them to send him the information and he would "take it from there." The next month they provided Abraham written notice of Donnelly's injury. At some point Farmers generated a claim number, 3008616861-1-1, relating to the January 2017 incident and Donnelly's injuries. In 2018, Famers mailed the Insureds at least two letters relating to the claim.

¶ 5         On January 24, 2019, Donnelly filed her complaint initiating the underlying action by alleging she sustained injuries due to the Insureds negligence. Though Donnelly did

- 2 -

not name Farmers as a defendant, she provided Farmers a copy of the complaint. On March 7, 2019, Farmers sent the Insureds a letter disclaiming coverage for Donnelly's injuries. Citing the resident and business exclusions in the homeowners policy, Farmers found their application excluded coverage because "[a]t the time of her alleged injury, Ms. Donnelly was a tenant in your home." Days later Farmers filed a complaint for declaratory relief alleging it had no duty to defend or indemnify the Insureds because policy exclusions applied to exclude Donnelly's claims from coverage and asking the trial court to declare the same. The Insureds responded by arguing the policy exclusions did not apply and the policy covered Donnelly's injuries. They raised four counterclaims against Farmers, including: (1) Farmers breached the policy by denying or disclaiming the claim; (2) Farmers' denial of the claim, or alternatively, Farmers' unreasonable delay in settling the claim constitute violations of section 155 of the Illinois Insurance Code (215 ILCS 5/155(1) (West 2018)); (3) Farmers breached its duties under the policies when it failed to defend the Insureds, failed to consider their interests, failed to settle the claim, and rejected a demand for the policy limits; and lastly, (4) they sought declaratory judgment that Donnelly's claim is covered under the insurance policy with Farmers.

¶ 6 Pursuant to section 2-619.1 of Illinois's Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)), Farmers moved to dismiss the Insureds' claim for relief under the Illinois Insurance Code, arguing, as a matter of pleading, the counterclaim "failed to identify any factual allegations to support a claim that Farmers acted vexatiously or unreasonably" and, on legal grounds, "[n]o claim for violation of Section 155 will lie where there is a *bona fide* dispute concerning the scope and application of insurance coverage." Farmers also moved to strike the Insureds' jury demand, claiming that dismissing the section 155 count left only equitable claims,

which are inappropriate for a jury. The trial court granted Farmers' motion, dismissing the section 155 counterclaim and striking the jury demand.

¶ 7    Farmers eventually moved for judgment on the pleadings, pursuant to section 2-615(e) of the Code, claiming "it has no duty to defend or indemnify [the Insureds] for a complaint filed by Cynthia Donnelly." Farmers' motion identified the following pertinent policy provisions:

"The policy provides the following exclusions which are relevant to this dispute:

*Section II—Liability Exclusions*

Coverage E (Personal Liability), Coverage F (Medical Payments to Others) and *personal injury* coverage, if covered under this policy do not apply to:

1. *Any insured or other residents of the residence premises*. We do not cover *bodily injury* or *personal injury to*:

   a. *any insured*; or

   b. any resident of the *residence premises*, whether resident in the *dwelling* or a *separate structure*. However, we do cover *bodily injury to a residence employee* unless the bodily injury is the result of the conduct of an insured or representative of an *insured* which would be serious and willful misconduct under the

workers' compensation laws." (Emphases in original.)

Farmers noted the above exclusion precludes "coverage for bodily injury to any resident of the residence premises." It then argued that since "[t]here is no dispute that Cynthia Donnelly was a resident of the home insured under the Farmers policy," and since "there is no dispute that the home where she was residing falls within the definition of the residence premises," then "Farmers is entitled to a ruling as a matter of law that [it] has no duty to defend or indemnify the insureds for the complaint." The Insureds acknowledged Donnelly was a tenant in their insured home, but argued a tenant is not a resident for purposes of the resident exclusion. The Insureds further argued other provisions in the policy provided coverage for Donnelly's injury, namely the exception to the rental property exclusion and a provision allowing for "Loss of rents."

¶ 8          The parties appeared before the trial court for a hearing on Farmers' motion on December 10, 2020. The next day, the trial court issued a four-paragraph order granting Farmers' motion for judgment on the pleadings and dismissing the case. Specifically, "[t]he court [found] that there are no genuine issues of material fact and that Farmers is entitled to a finding as a matter of law that it has no duty to defend or indemnify [the Insureds] for the underlying complaint ***, as the allegations in this complaint are excluded under the Residence Premises exclusion in Farmers Policy number 0937835833."

¶ 9          This appeal followed.

¶ 10                              II. ANALYSIS

¶ 11          The Insureds challenge the trial court's order on three grounds: (1) the trial court erred in granting Farmers' motion for judgment on the pleadings because there is a clear ambiguity in the policy and the resident exclusion cannot apply, (2) the trial court should have

estopped Farmers from disclaiming coverage because Farmers twice informed the Insureds that the claim was covered and then waited two years before sending a notice it was disclaiming coverage, and (3) the trial court erred in dismissing the Insureds' counterclaim alleging a violation of section 155 of the Illinois Insurance Code. We disagree and affirm.

¶ 12                                   A. Judgment on the Pleadings

¶ 13          The Code, specifically section 2-615(e), provides that "[a]ny party may seasonably move for judgment on the pleadings." 735 ILCS 5/2-615(e) (West 2018). "Judgment on the pleadings is proper when the pleadings disclose no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Illinois State Bar Ass'n Mutual Insurance Co. v. Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 33, 103 N.E.3d 1087. When presented with a section 2-615(e) motion, "the trial court can only consider the facts apparent from the face of the pleadings, attachments to the pleadings, judicial admissions in the record, and matters subject to judicial notice." *Illinois State Bar Ass'n Mutual Insurance Co.*, 2018 IL App (4th) 170548, ¶ 33. We review *de novo* a trial court's decision granting a motion for judgment on the pleadings. *Core Construction Services of Illinois, Inc. v. Zurich American Insurance Co.*, 2019 IL App (4th) 180411, ¶ 24, 126 N.E.3d 694.

¶ 14                          1. *An Insurer's Duty to Defend its Insured*

¶ 15          An insurer has a duty to defend its insured "[i]f the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage." *Illinois State Bar Ass'n Mutual Insurance Co.*, 2018 IL App (4th) 170548, ¶ 35. It follows then, that "[a]n insurer may not refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations fail to state facts that bring the case within, or potentially within, the insured's policy coverage." *Core Construction Services of Illinois, Inc.*, 2019 IL App (4th)

180411, ¶ 25. "In a declaratory judgment action such as that presented here, where the issue is whether the insurer has a duty to defend, a court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy." *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455, 930 N.E.2d 1011, 1016-17 (2010). Though the court's analysis begins with the underlying complaint, it may look beyond that document to the other pleadings and evidence to determine an insurer's duty to defend, so long as the court does not determine a critical issue in the underlying action. See *Pekin Insurance Co.*, 237 Ill. 2d at 459-62; see also *Core Construction Services of Illinois, Inc.*, 2019 IL App (4th) 180411, ¶ 26 (explaining when a trial court may look beyond the underlying complaint and what the court may look at).

¶ 16        "If an insurer relies on an exclusionary clause to deny coverage" and refuses its duty to defend its insured, as Farmers does here, then "it must be clear and free from doubt that the exclusionary clause applies." *Illinois State Bar Ass'n Mutual Insurance Co.*, 2018 IL App (4th) 170548, ¶ 37. When an insurer invokes an exclusionary clause to deny coverage and its duty to defend, it bears the burden of proving the exclusion applies. *Illinois State Bar Ass'n Mutual Insurance Co.*, 2018 IL App (4th) 170548, ¶ 37.

¶ 17                2. *Interpreting this Insurance Policy's Resident Exclusion*

¶ 18        "When construing the language of an insurance policy, a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy." *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153, 821 N.E.2d 206, 213 (2004). If the policy's words are clear and unambiguous, they will be given their plain and ordinary meaning; but if the policy terms "are reasonably susceptible to more than one meaning, they are ambiguous and will be strictly construed against the drafter." *Central*

*Illinois Light Co.*, 213 Ill. 2d at 153. Policy terms are "not rendered ambiguous merely because the parties disagree on [their] meaning." *Central Illinois Light Co.*, 213 Ill. 2d at 153. Likewise, courts "will not strain to find ambiguity in an insurance policy where none exists." (Internal quotation marks omitted.) *Hess v. Estate of Klamm*, 2020 IL 124649, ¶ 16, 161 N.E.3d 183. "Courts will construe the policy as a whole and consider the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Illinois State Bar Ass'n Mutual Insurance Co.*, 2018 IL App (4th) 170548, ¶ 40. As we do with decisions granting motions for judgment on the pleadings, we review *de novo* a trial court's construction of an insurance policy. *Illinois State Bar Ass'n Mutual Insurance Co.*, 2018 IL App (4th) 170548, ¶ 40.

¶ 19　　　　　　　　　　3. *This Insurance Policy and Resident Exclusion*

¶ 20　　　　　　The Insureds' homeowners insurance policy included certain liability coverage. Coverage E (Personal Liability) provided:

> "We will pay those damages which an *Insured* becomes legally obligated to pay because of:
>
> 1. *bodily injury* resulting from an *occurrence*; or
>
> 2. *property damage* resulting from an *occurrence*.
>
> At our expense and with attorneys of our choice, we will defend an *insured* against any suit seeking damages covered under Coverage E (Personal Liability). Our obligation to defend a suit seeking damages ends once we have paid our applicable *stated limit*. We may investigate and settle any claim or suit seeking damages that we consider appropriate.

We do not have any duty to defend or settle any suit involving actual, alleged, threatened or declared *bodily injury* or *property damage* not covered under this liability insurance. This applies whether or not the suit is groundless, false or fraudulent."

(Emphases in original.)

The Insureds' homeowners policy, however, also contained a Liability Exclusions section, which provided: "Coverage E (Personal Liability) *** and *personal injury* coverage, if covered under this policy, do not apply to: *Any insured or other residents of the residence premises.* We do not cover bodily injury or personal injury to: (a) any *insured*; or (b) any resident of the *residence premises*, whether resident in the *dwelling* or a *separate structure*." (Emphases in original.) "Insured" is a defined term in policy while "resident" is not.

"Insured—means:

(a) you;

(b) permanent residents of your household who are:

(1) your relatives; or

(2) other persons under the age of 21 and in the care

of any person named above in subsection a or b(1);"

The parties agree Donnelly does not qualify as an "insured" under the policy. They part ways, however, on whether she qualifies as a "resident." Farmers argues Donnelly was a resident of the residence premises because she lived there pursuant to a two-year lease she signed with the Insureds. The Insureds maintain Donnelly was a "tenant" and they reason that since the instant policy uses "tenant" in two different provisions, then "resident(s)" cannot include tenants,

making the resident exclusion ambiguous and inapplicable here. As we understand the issue, this case centers upon what "resident(s)" means, specifically, does it include tenants like Donnelly?

¶ 21 The instant policy does not define "resident(s)." As an undefined term, we must give "resident(s)" its "plain, ordinary and popular meaning, *i.e.*, [it] will be construed with reference to the average, ordinary, normal, reasonable person." *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 393, 830 N.E.2d 575, 582 (2005). When average, reasonable people want to know the meaning of a word, they reach for a dictionary, or in this age of technology, they go to the internet. Dictionary.com defines "resident" as "a person who resides in a place." Dictionary.com, https://www.dictionary.com/browse/resident (last visited November 16, 2021). It defines "resides" as "to dwell permanently or for a considerable time," giving as an example, "She resides at 15 Maple Street." Dictionary.com, https://www.dictionary.com/browse/reside (last visited November 16, 2021). Taking the "dwell" aspect of the definition first, the Insureds and Donnelly admitted they signed a lease giving Donnelly the right to live in the insured home (*i.e.*, the residence premises). In her underlying complaint, Donnelly identified herself as a tenant lawfully on the premises. We understand that to mean she dwelt in the home. In fact, neither the Insured nor Donnelly denied she lived in the insured home. Taking the time aspect of the definition second, we conclude Donnelly signaled her intent to live in the home for a considerable amount of time by signing a two-year lease. *Cf. Cincinnati Insurance Co. v. Argubright*, 151 Ill. App. 3d 324, 330, 502 N.E.2d 868, 872 (1986). Considering the plain, ordinary, and popular meaning of "resident(s)," we conclude Donnelly was a resident of the residence premises when she allegedly injured herself on January 25, 2017. Consequently, like the trial court, we conclude the resident exclusion applies to preclude coverage.

¶ 22 The Insureds argue the resident exclusion is ambiguous and cannot apply because "residents" as used in the exclusion cannot include "tenants," noting how the policy twice mentions a "tenant." We reject the Insureds' attempt to inject ambiguity into the policy, echoing our supreme court: "[W]e will not strain to find ambiguity in an insurance policy where none exists." (Internal quotation marks omitted.) *Estate of Klamm*, 2020 IL 124649, ¶ 16. Insurance policy terms are ambiguous only when they "are reasonably susceptible to more than one meaning." *Central Illinois Light Co.*, 213 Ill. 2d at 153. We observe the Insureds offer no reasonable interpretation for "resident(s)" other than their claim that it cannot include "tenants." This is not a reasonable, alternative interpretation to the plain, ordinary meaning of "resident(s)" from the dictionary. Separating tenants from residents for purposes of the resident exclusion because the policy uses "tenant" in two other unrelated policy provisions amounts to the Insureds suggesting a " 'creative possiblit[y]' " and not a reasonable interpretation for "resident(s)." *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17, 823 N.E.2d 561, 564 (2005) (quoting *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 193, 620 N.E.2d 355, 363 (1999)). "Although policy terms that limit an insurer's liability will be liberally construed in favor or coverage, this rule of construction only comes into play when the policy is ambiguous." *Hobbs*, 214 Ill. 2d at 17. Here, while we have two views, one where "resident(s)" includes Donnelly and one where it does not, the parties' disagreement does not create ambiguity. See *Central Illinois Light Co.*, 213 Ill. 2d at 153. Absent ambiguity, we need not construe the policy term "resident(s)."

¶ 23 Without an alternate meaning for "resident(s)" to raise an ambiguity, the Insureds sidestep applying the term's plain, ordinary meaning by directing our attention to other policy provisions, namely the two uses of "tenant," the rental exclusion, and a provision for loss of

rents, in claiming the resident exclusion must be ambiguous, it cannot apply, and the policy as a whole grants coverage for Donnelly's injuries. But even considering these provisions and the policy as a whole, we do not see where this particular homeowners policy contemplates personal liability coverage when a two-year renter injures herself on a defective stair on the residence premises. Beginning with "Liability Coverage, Coverage E (Personal Liability)," the policy "will pay those damages which an insured becomes legally obligated to pay because of bodily injury resulting from an occurrence ***." But the personal liability coverage is subject to several limitations, including two relevant to this analysis: the resident exclusion and the rental property exclusion. The former, as we have discussed above, precludes coverage for "bodily injury or personal injury to any insured; or any resident of the residence premises, whether resident in the dwelling or a separate structure." The latter precludes coverage for "bodily injury, property damage or personal injury arising from, during the course of or in connection with the rental or holding for rental of any property or any part of any premises by any insured to any party." As we understand these provisions, the policy grants personal liability coverage for some injuries but excludes such coverage when someone who resides in the home sustains the injury, including renters.

¶ 24        The rental property exclusion does contain an exception wherein the "exclusion does not apply to the rental or holding for rental of that part of an insured location which is rented or available for rent: (a) on an occasional basis for sole use as a residence; to no more than two roomers or boarders at the same time for sole use as a residence; or as an office, studio or private garage." The Insureds cling to this exception to the exclusion to argue either tenants rent the premises on an occasional basis for sole use as a residence or, alternatively, this demonstrates the parties' intention for the policy to cover Donnelly's injuries. We see two problems with this

argument. First, the exception to the rental exclusion does not use the word "tenant" or even "renter," but "roomers or boarders" who rent "*part* of an insured location." (Emphasis added.) Given the blanket exclusion for bodily injuries arising from or during the rental of the property to "*any* party" (emphasis added), we see this exception to the exclusion as a narrow one, and it does not represent the policy's intent to cover Donnelly's injuries. Second, and more importantly, "an exception to an exclusion *** should not be interpreted as granting coverage or providing an additional basis for coverage." *Qualls v. Country Mutual Insurance Co.*, 123 Ill. App. 3d 831, 834, 462 N.E.2d 1288, 1291 (1984); see also *JG Industries, Inc. v. National Union Fire Insurance Co. of Pittsburgh*, 218 Ill. App. 3d 1061, 1066, 578 N.E.2d 1259, 1262 (1991) ("Generally, an exception to an exclusion should not be interpreted as providing coverage or providing an additional basis for coverage."); *Central Illinois Public Service Co. v. Allianz Underwriters Insurance Co.*, 240 Ill. App. 3d 598, 603, 608 N.E.2d 155, 158 (1992); *Stoneridge Development Co., Inc. v. Essex Insurance Co.*, 382 Ill. App. 3d 731, 756, 888 N.E.2d 633, 656 (2008) (stating the "principle that an exception to an exclusion does not create coverage or provide an additional basis for coverage [citation] but, rather, merely preserves coverage already granted in the insuring provision" (Internal quotation marks omitted.)).

¶ 25        Looking at the policy as a whole and considering the type of policy involved, as the Insureds implore us to do, we cannot conclude the parties intended for the personal liability coverage in this homeowners' policy to apply to bodily injuries sustained by a person renting the insured home for two years. While the policy provides for personal liability coverage for bodily injuries, it subjects that grant of coverage to several exclusions. "[E]xclusions define the limits of coverage actually provided. If *any one* of the exclusions applies there is no coverage." (Emphasis added.) *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 494, 475 N.E.2d 872, 876

(1985). Considering the policy's grant of personal liability coverage along with the relevant exceptions, we conclude the parties did not intend for the policy to cover injuries sustained by anyone residing in the home, including renters like Donnelly.

¶ 26    In sum, since "resident(s)" is an undefined, unambiguous policy term, we give it its plain, ordinary meaning. Given that meaning—one who dwells in a place permanently or for a considerable amount of time—we conclude, based on the allegation in the underlying complaint that Donnelly was a tenant in the Insureds' home, Donnelly was a resident of the residence premises when she allegedly sustained injuries from a defective stair in the home. See *Core Construction Services of Illinois, Inc.*, 2019 IL App (4th) 180411, ¶ 25 (stating our analysis must begin with the allegations in the underlying complaint). Consequently, it is "clear and free from doubt" the resident exclusion applied to preclude coverage, Farmers had no duty to defend the Insureds, and the trial court rightly granted Farmers' motion for judgment on the pleadings. *Illinois State Bar Ass'n Mutual Insurance Co.*, 2018 IL App (4th) 170548, ¶ 37.

¶ 27                              B. Estoppel

¶ 28    The Insureds next argue Farmers should be estopped from exercising the right to disclaim coverage because it twice informed the Insureds it would cover the claim and then waited two years to disclaim coverage. We disagree.

¶ 29    In the insurance context, "[e]stoppel implies the prejudicial reliance of the insured upon some act, conduct, or nonaction of the insurer." *Standard Mutual Insurance Co. v. Petreikis*, 183 Ill. App. 3d 272, 280, 538 N.E.2d 1327, 1332 (1989). "Mere delay in disclaiming liability is not enough" to establish estoppel. *Old Mutual Casualty Co. v. Clark*, 53 Ill. App. 3d 274, 279, 368 N.E.2d 702, 705 (1977). "[T]o establish an estoppel, the insured must show that (1) it was in some manner misled by the acts or statements of the insurer or its agents; (2) it

- 14 -

relied on this conduct or misrepresentation; (3) such reliance was reasonable; and (4) it was prejudiced thereby." *Petreikis*, 183 Ill. App. 3d at 280-81. The insured who claims estoppel bears the burden of proving these four elements by clear, concise, and unequivocal evidence. *Old Mutual Casualty Co.*, 53 Ill. App. 3d at 279.

¶ 30 Here the Insureds base their estoppel claim on their agent's comment when they informed him of Donnelly's injury, when he said "[he] will take it from there." The Insureds also reference two letters Farmers sent them in 2018. In a May 4 letter, Farmers indicated: "We will continue with our investigation in an effort to resolve this *** and will keep you advised of the status. *** Defending you based on the protection in your policy *** is our first priority." This letter directed the Insureds to Farmers' website "to learn more about our self-service options available to you; including the ability to view your claim status." In an August 2018 letter, Farmers informed the Insureds of the policy limits for liability under the policy, and it stated: "We will continue to investigate this matter on your behalf." The Insureds document no other communication between them and Farmers until Farmers sent them the March 7, 2019, letter wherein it denied coverage. The Insureds argue these communications, coupled with Farmers' delay in disclaiming coverage, satisfy the elements of estoppel. We disagree. Even if the above allegations satisfied the first two estoppel elements (Farmers' statements misled the Insureds and the Insureds relied upon their statements), they have not shown such reliance was reasonable. See *Petreikis*, 183 Ill. App. 3d at 281. Farmers twice informed the Insureds it was investigating their claim, but Farmers did not promise coverage. Similarly, Abraham's comment that Farmers "will take it from there" did not promise coverage. More importantly, though, the Insureds have not alleged prejudice, let alone present clear, concise, unequivocal evidence of prejudice. See *Petreikis*, 183 Ill. App. 3d at 281; *Old Mutual Casualty Co.*, 53 Ill. App. 3d at 279. Prejudice in

this context requires the Insureds to show "*they acted to their detriment* in reasonable reliance on manifestations by" *Farmers.* (Emphasis in original.) *Insurance Co. of North America v. McCleave*, 462 F.2d 587, 588 (1972). Mere allegations of prejudice are insufficient. *Laycock v. American Family Mutual Insurance Co.*, 289 Ill. App. 3d 264, 269, 682 N.E.2d 382, 386 (1997) ("[P]rejudice cannot be presumed from the mere allegation that plaintiffs were lulled into a false sense of security without allegations or evidence of a resulting loss or action to their detriment."). The Insureds brief makes the conclusory claim: "Insureds have suffered damages and will continue to suffer damages as a result of Farmers['] actions." Since the Insureds' claim does not identify prejudice and since they present no evidence of prejudice, we conclude they did not meet their burden of proving estoppel. *Old Mutual Casualty Co.*, 53 Ill. App. 3d at 279; see also *Laycock*, 289 Ill. App. 3d at 270 ("Because plaintiffs do not assert how they were prejudiced *** plaintiffs fail to establish a necessary element of estoppel.").

¶ 31                    C. The Insureds' Counterclaim and Jury Demand

¶ 32          The Insureds argue the trial court erred in dismissing their counterclaim alleging a violation of section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2018)) and then striking their jury demand. We disagree on the first point. Because we affirm the dismissal of the counterclaim and the trial court's dismissal of the case, we need not address the Insureds' jury-demand argument.

¶ 33          "Section 155 was enacted by the legislature 'to provide a remedy to an insured who encounters unnecessary difficulties when an insurer withholds policy benefits.' " *McGee v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d 673, 680-81, 734 N.E.2d 144, 151 (2000) (quoting *Richardson v. Illinois Power Co.*, 217 Ill. App. 3d 708, 711, 688 N.E.2d 823, 826 (1991)). It provides:

"(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as a part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $60,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action." 215 ILCS 5/155(1) (West 2018).

Section 155's provisions represent "an extracontractual remedy intended to make suits by policyholders economically feasible and punish insurance companies for misconduct." *McGee*, 315 Ill. App. 3d at 681. Consequently, "[t]he key question in a section 155 claim is whether an insurer's conduct is vexatious and unreasonable." *McGee*, 315 Ill. App. 3d at 681.

¶ 34    "To state a claim under section 155," the insured must plead "a modicum of factual support" and "cannot merely allege that the insurer's conduct was vexatious and

unreasonable." *McGee*, 315 Ill. App. 3d at 681. "An insurer's delay in settling a claim will not be deemed vexatious or unreasonable for purposes of section 155 sanctions where a *bona fide* dispute over coverage exists." *Baxter International, Inc. v. American Guarantee and Liability Insurance Co.*, 369 Ill. App. 3d 700, 710, 861 N.E.2d 263, 272 (2006). The court must consider the totality of the circumstances "when deciding whether an insurer's conduct is vexatious and unreasonable, including the insurer's attitude, whether the insured was forced to sue to recover and whether the insured was deprived of the use of his property." *Baxter*, 369 Ill. App. 3d at 710.

¶ 35    The Insureds' section 155 counterclaim alleged the same facts they raised in their estoppel defense, detailing their reports of Donnelly's injury to their agent, Abraham's statement, Farmers generating a claim number, Farmers' investigation, Farmers' two letters, and then the March 7, 2019, letter denying coverage. The counterclaim then alleged Farmers' "wrongful denial and or disclaiming of the claim is a violation of 215 ILCS 5/155" and, "[i]n the alternative, [Farmers'] unreasonable delay in settling the claim is a violation of 215 ILCS 5/155." The Insureds claimed they are entitled to damages under the statute.

¶ 36    Pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)), Farmers moved to dismiss the section 155 counterclaim. It argued the Insureds' claim should be dismissed under section 2-615 of the Code because they "failed to identify any factual allegations to support a claim that Farmers acted vexatiously or unreasonably." Farmers further argued the counterclaim should be dismissed under section 2-619 of the Code because "[n]o claim for violation of Section 155 will lie where there is a *bona fide* dispute concerning the scope and application of insurance coverage" (citing *Baxter*, 369 Ill. App. 3d at 710). The Insureds noted that " '*[b]ona fide*' has been defined in the context of Section 155 as '[r]eal, actual, genuine, and not feigned.' " (quoting *American States Insurance Co. v. CFM Construction Co.*,

398 Ill. App. 3d 994, 1003, 923 N.E.2d 299, 308 (2010)). Farmers' motion also sought to strike the Insureds' jury demand.

¶ 37     At the hearing on Farmers' motion to dismiss, the trial court "considered the parties['] briefs and oral argument, and ruled that the time between the filing of the underlying cause of action, January 24, 2019, and the time of filing the action for Declaratory Judgment March 11, 2019 was not unreasonable." The trial court "dismissed with prejudice Count II— Violation of 215 ILCS 5/155 of *** the insureds' Counter Claims; and struck *** the insureds' demand for Jury on the Counterclaims for Count I—Breach of Contract and Count III—Breach of Duty." "We review a section 2-619 dismissal *de novo*." *Richter v. Prairie Farms Dairy, Inc.*, 2015 IL App (4th) 140613, ¶ 22, 34 N.E.3d 617; *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361, 919 N.E.2d 926, 931-32 (2009) (stating *de novo* standard for section 2-615 and 2-619 motions to dismiss).

¶ 38     We affirm the trial court's dismissal, agreeing that Farmers did not unreasonably delay, nor did it wrongly deny coverage. "[T]wo requirements must be satisfied before an insurer's duty to defend arises: (1) the action must be brought against an insured, and (2) the allegations of the complaint must disclose the potential of policy coverage." *Federal Insurance Co. v. Economy Fire & Casualty Co.*, 189 Ill. App. 3d 732, 735, 545 N.E.2d 541, 544 (1989). Farmers had no duty to defend the Insureds until Donnelly filed her complaint on January 24, 2019. Once that duty arose, Farmers acted expeditiously, denying coverage on March 7, 2019, and filing its complaint for declaratory relief four days later. This is not an unreasonable delay. Furthermore, considering the totality of the circumstances, Farmers' actions of investigating the claim and communicating with the Insureds during the months between when Donnelly sustained the injury and when she filed her complaint does not amount to unreasonable or vexatious

conduct. See *McGee*, 315 Ill. App. 3d at 681 (stating that in determining whether an insurer's conduct is vexatious and unreasonable, the "court must consider the totality of the circumstances including the insurer's attitude"). Finally, as we explained *supra*, Farmers did not wrongly deny coverage because it is "clear and free from doubt" the resident exclusion applied to preclude coverage. See *Illinois State Bar Ass'n Mutual Insurance Co.*, 2018 IL App (4th) 170548, ¶ 37. The trial court, therefore, properly granted Farmers' section 2-619.1 motion to dismiss.

¶ 39                                III. CONCLUSION

¶ 40          For the reasons stated, we affirm the trial court's judgment.

¶ 41          Affirmed.