NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 221100-U

NO. 4-22-1100

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 26, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| STATE FARM FIRE & CASUALTY COMPANY, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Boone County |
| NATHAN P. ZEIEN and GEORGE ODARCZENKO, as | ) | No. 22MR2 |
| Administrator of the Estate of Victoria Odarczenko, | ) | |
| Deceased | ) | Honorable |
| Defendants | ) | C. Robert Tobin III, |
| (George Odarczenko, as Administrator of the Estate of | ) | Judge Presiding. |
| Victoria Odarczenko, Deceased, | ) | |
| Defendant-Appellant.) | | |

PRESIDING JUSTICE DeARMOND delivered the judgment of the court.
Justices Cavanagh and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the circuit court properly granted plaintiff's
motion for summary judgment.

¶ 2    In February 2022, plaintiff, State Farm Fire & Casualty Company (State Farm),

filed a complaint for declaratory judgment, contending it had no duty to defend defendant,

Nathan P. Zeien, in the underlying lawsuit filed by defendant, George Odarczenko, as

administrator of the estate of Victoria Odarczenko, deceased, because policy exclusions

precluded coverage for the negligent acts alleged in George's complaint. State Farm

subsequently filed a motion seeking summary judgment to that effect and, following a hearing in

October 2022, the circuit court granted State Farm's motion.

¶ 3    George appeals, arguing the circuit court erred by granting summary judgment in favor of State Farm. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5    The allegations of the underlying tort action are not in dispute. In October 2020, Zeien was driving his "2020 Polaris RZR XP 4 Turbo," a 168-horsepower "motorized utility task vehicle [(UTV)]," on an "improved unpaved public road in the Nicolet National Forest (Township of Alvin, Forest County, Wisconsin)." As Zeien attempted to navigate a right-hand curve, the UTV rolled over onto its driver's side, slid off the roadway, and struck two poplar trees alongside the road. Victoria was riding in the backseat of Zeien's UTV at the time of the accident and, consequently, suffered multiple injuries, resulting in her death.

¶ 6    In August 2022, George, as administrator of Victoria's estate, filed a 14-count, third amended complaint against Zeien and five other defendants not subject to the instant appeal. With respect to Zeien, the third amended complaint invoked the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2022)) and the Survival Act (755 ILCS 5/27-6 (West 2022)), alleging Victoria was mortally injured due to Zeien's negligence. Specifically, the complaint alleged Zeien owed a duty to Victoria to exercise reasonable care in the operation of the UTV, and Zeien violated that duty by committing one or more of the following acts: (1) operating the UTV carelessly so as to endanger Victoria, (2) failing to remain on the right side of the roadway's surface, (3) failing to exercise a reasonable degree of care and caution while operating the UTV, and (4) failing to properly maintain the UTV. Furthermore, the complaint contained a picture of a UTV "like the one Victoria was in when she was killed," which depicted an open, motorized vehicle having four deep-treaded tires with four seats positioned side-by-side and enclosed within a roll cage structure.

¶ 7        Zeien sought coverage from the lawsuit under a homeowners policy issued to him by State Farm. However, State Farm refused to accept Zeien's tender of defense.

¶ 8        Zeien's homeowners insurance policy included certain liability coverage. "Coverage L—Personal Liability" provided

> "If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, caused by an *occurrence*, we will:
>
>> 1. pay up to *our* limit of liability for the damages for which the *insured* is legally liable. *We* will not pay for criminal restitution; and
>>
>> 2. provide a defense at *our* expense by counsel of *our* choice. *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend any suit ends when the amount *we* pay for damages, to effect settlement or satisfy a judgment resulting from the *occurrence*, equals *our* limit of liability. *We* will not provide a defense to any *insured* for criminal prosecution or proceedings." (Emphases in original.)

Zeien's homeowners policy, however, also contained an "Exclusions" section, which provided:

> "Coverage L *** do[es] not apply to:
>
> * * *
>
> f. *bodily injury* or *property damage* arising out of the ownership, maintenance, use, loading, or unloading of:

- 3 -

* * *

(2) a *motor vehicle* owned or operated by or rented or loaned to any *insured*." (Emphases in original.)

"Motor vehicle" is a defined term under Zeien's homeowners policy and provides, in relevant part:

" '*motor vehicle*' \*\*\* means:

* * *

c. a 'recreational or utility vehicle' while off an *insured location*. 'Recreational or utility vehicle' means a motorized vehicle designed for recreation or utility purposes, used principally off public roads, and that is owned or leased by an *insured*. This includes, but is not limited to, a motorized all-terrain vehicle, side-by-side vehicle, utility work vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike, and personal assistive mobility device." (Emphases in original.)

Zeien's homeowners policy defines "insured location" as follows:

" '*insured location*' means:

a. the *residence premises*

b. the part of any other premises, other structures, and grounds used by *you* as a residence. This includes

- 4 -

premises, structures, and grounds *you* acquire while this policy is in effect for *your* use as a residence;

      c. any premises used by *you* in connection with the premises included in 11.a. or 11.b. above." (Emphases in original.)

¶ 9      State Farm filed a complaint for declaratory judgment in February 2022, seeking a ruling that it had no duty to defend or indemnify Zeien in the underlying lawsuit. In July 2022, State Farm filed a motion for summary judgment to that effect, claiming it had "no duty to defend or indemnify Zeien *** for the matters alleged in the Odarczenko complaint" and was entitled to judgment as a matter of law. In support of its motion, State Farm identified the pertinent policy provisions and exclusions for bodily injuries arising from the use of a "recreational or utility vehicle" while away from an insured location. State Farm then argued that since George's complaint "plainly allege[d] that Zeien was operating the UTV on a gravel road in Wisconsin," then the above motor vehicle exclusion precluded "coverage for the liability stemming from the *** accident" because the "undisputed facts *** establish[ed] that the injury happened while off the 'insured location.' "

¶ 10      On October 17, 2022, George filed a response to State Farm's motion and acknowledged State Farm "correctly argue[d] the accident occurred while the vehicle was 'off an insured location,' " but he asserted Zeien's UTV was not a " 'recreational or utility vehicle.' " Furthermore, George's response sought leave to conduct discovery, claiming State Farm's summary judgment motion was a "*Celotex*-type motion," and due to that characterization, "[c]ompliance with Rule 191(b)'s affidavit requirement, applicable when the nonmovant still requires discovery of material facts in order to respond, [was] not required."

¶ 11     On October 25, 2022, the parties appeared before the circuit court for a hearing on State Farm's motion. On November 8, 2022, the court entered a three-page order granting State Farm's motion for summary judgment and denying George's request to conduct preliminary discovery, finding there were "no ambiguities *** , and the matter [could] be resolved by reasonable interpretations given to the Third Amended Complaint and the Policy." The court then found:

> "Under no reasonable interpretation of the policy do the allegations in the Third Amended Complaint fall within the coverage of the Policy. As defined by the Third Amended Complaint[,] the UTV is a motor vehicle that is a recreational or utility vehicle. The incident occurred in Wisconsin while the insured premises are in Illinois. As a matter of law, Forest County, Wisconsin is not a premise that is used by Zeien in connection with the property in Illinois."

Thereafter, George filed a motion to reconsider which the court ultimately denied.

¶ 12     This appeal followed.

¶ 13                    II. ANALYSIS

¶ 14     On appeal, George asserts the circuit court erred by granting summary judgment in favor of State Farm, alleging there is a clear ambiguity in the policy and, thus, the motor vehicle exclusion cannot apply. He further asserts the court erred when it denied his request to conduct preliminary discovery because State Farm's motion for summary judgment was a "*Celotex*-type motion" and, therefore, the affidavit requirement under Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013) did not apply.

¶ 15                                 A. Summary Judgment

¶ 16          Section 2-1005(c) of the Code of Civil Procedure (735 ILCS 5/2-1005(c) (West 2022)) governs summary judgments, providing the circuit court must enter judgment where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A defendant moving for summary judgment has two ways to meet his initial burden of production: (1) by affirmatively showing some element of the case must be resolved in his favor or (2) the "*Celotex*-type motion," where the burden essentially moves to the nonmoving party after the movant points out "the absence of evidence supporting the plaintiff's position." *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 355, 726 N.E.2d 1171, 1175 (2000). In either case, "once defendant has satisfied [his] initial burden of production, the burden shifts to plaintiff to present some factual basis that would arguably entitle [him] to a judgment under the applicable law." *Hutchcraft*, 312 Ill. App. 3d at 355.

¶ 17          The summary judgment procedure has been termed the " 'put up or shut up' " moment in litigation, meaning the party opposing summary judgment must produce actual evidentiary facts that would enable a jury to return a verdict in his or her favor and may not rely on mere speculation or conjecture. *Tafoya-Cruz v. Temperance Beer Co., LLC*, 2020 IL App (1st) 190606, ¶ 68, 178 N.E.3d 182. "Although a drastic means of disposing of litigation, summary judgment is, nonetheless, an appropriate measure to efficiently dispose of a suit when the moving party's right to the judgment is clear and free from doubt." *U.S. Bank, National Ass'n v. Reinish*, 2020 IL App (2d) 190175, ¶ 10, 164 N.E.3d 673. " '[W]here reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact.' "

*Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22, 131 N.E.3d 488 (quoting *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114, 649 N.E.2d 1323, 1326 (1995)). "With a summary judgment motion, courts construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Smith v. Hancock*, 2019 IL App (4th) 180704, ¶ 19, 133 N.E.3d 666. A circuit court's ruling on a motion for summary judgment presents a question of law, and thus we apply the *de novo* standard of review. *Mayfield Cooper Brotze v. City of Carlinville*, 2021 IL App (4th) 200369, ¶ 27, 183 N.E.3d 251.

¶ 18                           B. An Insurer's Duty to Defend Its Insured

¶ 19            "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer has a duty to defend." *Illinois State Bar Ass'n Mutual Insurance Co. v. Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 35, 103 N.E.3d 1087. "It follows then, that '[a]n insurer may not refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations fail to state facts that bring the case within, or potentially within, the insured's policy coverage.' " *Farmers Insurance Exchange v. Cheekati*, 2022 IL App (4th) 210023, ¶ 14, 196 N.E.3d 1209 (quoting *Core Construction Services of Illinois, Inc. v. Zurich American Insurance Co.*, 2019 IL App (4th) 180411, ¶ 25, 126 N.E.3d 694). "In a declaratory judgment action when the issue is whether the insurer has a duty to defend, courts first look to the allegations in the underlying complaint and compare those allegations to the relevant provisions of the insurance policy." *Core Construction Services of Illinois, Inc.*, 2019 IL App (4th) 180411, ¶ 25. "Though the court's analysis begins with the underlying complaint, it may look beyond that document to the other pleadings and evidence to determine an insurer's duty to defend, so long as the court does not determine a critical issue in the underlying action." *Farmers Insurance Exchange*, 2022 IL App (4th) 210023,

¶ 14; see *Core Construction Services of Illinois, Inc.*, 2019 IL App (4th) 180411, ¶ 26 (explaining when a circuit court may look beyond the underlying complaint and what the court may look at).

¶ 20 "If an insurer relies on an exclusionary clause to deny coverage," as State Farm does here, and refuses its duty to defend its insured, "it must be clear and free from doubt that the exclusionary clause applies." *Illinois State Bar Ass'n Mutual Insurance Co.*, 2018 IL App (4th) 170548, ¶ 37. "When an insurer invokes an exclusionary clause to deny coverage and its duty to defend, it bears the burden of proving the exclusion applies." *Farmers Insurance Exchange*, 2022 IL App (4th) 210023, ¶ 15.

¶ 21 C. Interpreting This Insurance Policy's Motor Vehicle Exclusion

¶ 22 "When construing the language of an insurance policy, a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy." *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153, 821 N.E.2d 206, 213 (2004). "If the policy's words are clear and unambiguous, they will be given their plain and ordinary meaning, but if the policy terms 'are reasonably susceptible to more than one meaning, they are ambiguous and will be strictly construed against the drafter.' " *Farmers Insurance Exchange*, 2022 IL App (4th) 210023, ¶ 17 (quoting *Central Illinois Light Co.*, 213 Ill. 2d at 153). "Policy terms are 'not rendered ambiguous merely because the parties disagree on [their] meaning.' " *Farmers Insurance Exchange*, 2022 IL App (4th) 210023, ¶ 17 (quoting *Central Illinois Light Co.*, 213 Ill. 2d at 153). Likewise, reviewing courts "will not strain to find ambiguity in an insurance policy where none exists." (Internal quotation marks omitted.) *Hess v. Estate of Klamm*, 2020 IL 124649, ¶ 16, 161 N.E.3d 183. "Courts will construe the policy as a whole and consider the type of insurance purchased, the nature of the risks involved, and the

overall purpose of the contract." *Illinois State Bar Ass'n Mutual Insurance Co.*, 2018 IL App (4th) 170548, ¶ 40. As we do with decisions granting motions for summary judgment, we review *de novo* a circuit court's construction of an insurance policy. *Illinois State Bar Ass'n Mutual Insurance Co.*, 2018 IL App (4th) 170548, ¶ 40.

¶ 23    Beginning with "Coverage L—Personal Liability," the policy "will *** pay up to our limit of liability for the damages for which the insured is legally liable." (Emphases omitted.) But the personal liability coverage is subject to limitation. As set forth above, the policy's motor vehicle exclusion precludes coverage for "bodily injury or property damage arising out of the ownership, maintenance, use, loading, or unloading of *** a motor vehicle owned or operated by or rented or loaned to any insured." (Emphases omitted.) Motor vehicles, as defined under this homeowners policy, include " 'recreational or utility vehicle[s]' while off an insured location." (Emphasis omitted.) The policy defines a "recreational or utility vehicle" as "a motorized vehicle designed for recreation or utility purposes, used principally off public roads, and that is owned or leased by an insured" (emphasis omitted), such as motorized all-terrain vehicles, side-by-side vehicles, and utility work vehicles.

¶ 24    Here, after reviewing the insurance policy and George's argument, we conclude the circuit court correctly found that "[u]nder no reasonable interpretation of the policy do the allegations in the Third Amended Complaint fall within the coverage of the Policy." The parties agree the accident occurred while off the insured location. Moreover, George's complaint acknowledges Zeien's "2020 Polaris RZR XP 4 Turbo"—which the complaint depicts as an open, motorized vehicle having four deep-treaded tires with four seats positioned side-by-side and enclosed within a roll cage structure—was a "utility task vehicle." That is exactly what the policy's motor vehicle exclusion excludes from coverage. See *Farmers Insurance Exchange*,

2022 IL App (4th) 210023, ¶ 17. Yet, in an effort to raise an ambiguity, George attempts to sidestep application of the policy's plain, ordinary language by directing our attention to the phrase "used principally off public roads" in claiming the policy's motor vehicle exclusion cannot apply.

¶ 25 We reject George's attempt to inject ambiguity into the policy and, to echo our supreme court, "will not strain to find ambiguity in an insurance policy where none exists." (Internal quotation marks omitted.) *Hess*, 2020 IL 124649, ¶ 16. George offers no reasonable alternative interpretation for the phrase "used principally off public roads," apart from his claim that, "because the term 'on public roads' is not defined in the insurance policy," then, "[t]o fall within the exclusion, the motor vehicle must have been 'not on public roads' at the time of the accident." (Emphasis omitted.) But even considering this language and the policy as a whole, application of the policy's motor vehicle exclusion does not turn on whether an accident occurred on or off a public road. If this court were to simply employ that test, the definition of "recreational or utility vehicle" would exclude many vehicles fitting squarely within the definition, even if the accident occurred away from an insured location. For example, under George's interpretation, an accident involving an insured's golf cart, which is expressly listed as a "recreational or utility vehicle," while off the insured location, would not fall under the policy's motor vehicle exclusion if the accident occurred on a public road. Looking at the policy as a whole and considering the type of policy involved, we cannot conclude the parties intended such a definition. See *Central Illinois Light Co.*, 213 Ill. 2d at 153; *Illinois State Bar Ass'n Mutual Insurance Co.*, 2018 IL App (4th) 170548, ¶ 40.

¶ 26 In sum, the language and meaning of the policy could not be clearer—there is no personal liability coverage for bodily injuries arising out of the "ownership, maintenance, use,

loading, or unloading" of "a 'recreational or utility vehicle' while off an insured location." (Emphasis omitted.) Zeien's "2020 Polaris RZR XP 4 Turbo" was a type of "utility vehicle," and the bodily injuries Victoria sustained were caused by an accident that occurred while Zeien was driving the UTV in Forest County, Wisconsin, which is off the insured location. Accordingly, it is "clear and free from doubt" that the motor vehicle exclusion here applied to preclude coverage, State Farm had no duty to defend Zeien, and the circuit court rightly granted summary judgment in favor of State Farm. *Illinois State Bar Ass'n Mutual Insurance Co.*, 2018 IL App (4th) 170548, ¶ 37; see *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 494, 475 N.E.2d 872, 876 (1985) ("If any one of the exclusions applies there is no coverage.").

¶ 27                                D. Additional Discovery

¶ 28           Finally, George argues he was entitled to discovery as a result of the filing of his affidavit pursuant to Rule 191(b) (eff. Jan. 4, 2013). However, Rule 191(b) requires the affiant to identify the persons who have knowledge of the material facts that would defeat summary judgment, state why their affidavits could not be obtained, and specify what such persons "would testify to if sworn," along with the reasons for such belief. Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013). The purported Rule 191(b) affidavit fails to comply with any of these requirements. George argues strict compliance with Rule 191(b) is not required here because State Farm's motion was a *Celotex*-type motion—a motion which rests not on affirmative evidence from the movant but on the assertion that the nonmovant cannot adduce evidence to support its case. See *Crichton v. Golden Rule Insurance Co.*, 358 Ill. App. 3d 1137, 1152-53, 832 N.E.2d 843, 857 (2005). State Farm's motion was not such a motion, as it asserted the policy and the underlying complaint affirmatively established its right to summary judgment. Accordingly, the circuit court's refusal to permit additional discovery was within its discretion.

¶ 29                                  III. CONCLUSION

¶ 30            For the foregoing reasons, we affirm the circuit court's judgment.

¶ 31            Affirmed.